## CHASE AND OTHERS V. CARTRIGHT AND OTHERS.

Decided June 7, 1890.

1. *Will—Construction—Estate conveyed to executors.*

Where a testator gave his property, real and personal, to his executors with power to dispose of it in their best judgment, directed them to pay certain large legacies, and devised over the thereafter remaining estate, the executors hold the legal title in fee to the property in trust for the *cestuis que trust.*

2. *Estoppel—Void executor's deed.*

An executor is not estopped by his own void conveyance of land of the estate to sue for its possession.

3. Cestuis que trust—*When barred.*

Where, in a suit for land, the statute of limitations is a bar to a trustee who holds the legal title in fee, it is a bar to all *cestuis que trust*, whether entitled in possession or in remainder, vested or contingent, and whether they are *sui juris* or under disability.

4. *Vendor's lien—Limitation.*

The lien of a vendor of land reserved in the face of the deed expires when the debt is barred by limitation.

APPEAL from *Crittenden* Circuit Court in Chancery.

J. E. RIDDICK, Judge.

*W. M. Randolph* for appellants.

1. Under the will the executors had no power to sell the lands. They were to be kept, and the income disbursed as prescribed by the will. Schouler, Ex. & Adm., secs. 212, 509; Mansf. Dig., ch. 1, sec. 14; 29 Ark., 418; Perry on Trusts, secs. 764-6-7.

2. Cannavan *alone* could not execute a valid deed to Hodges, and his deed passed no title. Perry on Trusts, secs. 783, 343, 496, 497, 499, 505; 31 Ark., 539; 4 Edw., Chy., 613; 6 Johns., 73; Mansf! Dig., sec. 647.

3. Asa Hodges had been appointed administrator in Arkansas of the estate of Daniel Hughes, and there was no order of the probate court removing him. The deed to him was void. 29 Ark., 419.

4. The plaintiffs are not barred. Their right of action did not accrue until the death of the Darragh children. Mansf. Dig., sec. 4471; 1 Greenl. Ev., sec. 41, and note 5. The statute does not run against a remainderman pending the life estate. Wood on Lim., sec. 259, p. 527; 22 Ark., 567; 35 Ark., 84; 42 Ark., 357.

The executors were not trustees of Mrs. Higgins and

Winters, but they took as residuary devisees under the will, on the death of Daniel Darragh, and not before. 31 Ark., 400-410; 6 Wallace, 458; 3 Sneed, 231; 2 Swan, 386; 1 Sneed, 304; 2 Head, 703; 4 Cold., 20.

5. Appellants are not barred to foreclose the lien reserved in the deed for the purchase money. 37 Ark., 511; 43 Ark., 504; 43 Ark., 469; 4 How., 289.

6. The presumption is that the debts have all been paid and the estate settled, and Mrs. Winters and Mrs. Higgins had the right to recover in their own right. 11 S. W. Rep., 100; 51 Ark.; 235.

*W. G. Weatherford* for appellees.

1. Chase, the administrator *de bonis non*, neither proves nor avers any interest in the suit. The original administration was granted twenty-one years before this suit, and no good reason given for the delay. So far as he is concerned, there is no case. 37 Ark., 155; 13 Ill., 171; 6 Johns., Chy., 360.

2. It is not necessary for a foreign executor to take out letters testamentary, but only that a *copy of the will* be properly probated and recorded. 29 Ark., 418. The executor had the same power of sale in Arkansas that he had in Tennessee.

Power to sell is found in the *will*, and not in the letters testamentary. 31 Ark., 181; 34 Ark., 462.

The language of the will clearly gives the power to sell. Any words which show an intent to create the power, or which impose duties which cannot be performed without a sale, will be sufficient. Perry on Trusts, 766.

Cannavan, as the only surviving trustee, had the power to sell. Mansf. Dig., sec. 647; Perry on Trusts, 343, 783, 502, 496-7, etc., 505.

From the date of the deed in October, 1866, the purchasers have held adversely, and both the trustees and *cestuis*

*que trust* are barred.    30 Ark., 249; 42 Ark., 25; 3 Wash. R. Pr., ch. 2, sec. 7, par. 46 *a*.   Adverse possession, as against a trustee for the requisite period, bars both the trustee and *cestui que trust*.    8 Humph., 563; 9 Humph., 550; 10 Humph., 88; 2 Swan, 387; 1 Sneed, 309; 5 Sneed, 247; 1 Sneed, 297; 2 Head, 69.    Where parties claim the benefit of a disability, the *onus* is on them to show that their suit is within the statutory limit.    27 Ark., 343; 52 Ark., 168.

An *equitable lien* is barred by the statute, herein differing from a mortgage.   43 Ark., 488; 41 Ark., 525.   The claim is stale.   46 Ark., 33; 42 Ark., 289; 7 How., 207; 12 How., 209; 96 U. S., 611; 99 U. S., 201; 52 Ark., 168.

HEMINGWAY, J.   The appellants, as residuary devisees and legatees under the will of Daniel Hughes, deceased, brought this suit.

Daniel Hughes died resident in Shelby county, Tennessee, on the 10th of February, 1862, seized of the land in controversy.   By last will, which was duly admitted to probate in that county in March, 1862, he disposed of his estate as follows:   "All my real and personal estate I give in trust to my executors for the purpose of disposing of it to the best of their judgment, for the support and education of my two children, the children of Eliza Darragh, and the support of the said Eliza.   For that purpose they are to give the said Eliza one thousand dollars a year until the eldest child is nine years old (it is now nearly two), and if either of the children should die before then, there shall be no change made as to the amount of a thousand dollars a year.   Should both children die before they are of age, Eliza Darragh is to receive out of my estate five hundred dollars a year during her life. Should the net income of my estate be two thousand dollars a year, after paying the legacies hereinafter mentioned, I wish my father to have five hundred dollars a year of this in-

come during his life, and if my mother out-lives him, she is to receive it after his death. The residue is to be invested in Memphis City bonds until the children, or the survivor of them, is sent to college. I desire my executors to exercise their best judgment in the selecting of a suitable school, and to be liberal, if the means are in their hands to procure them a good education. But my executors are requested to check and stop the supplies if they should be satisfied there is extravagance by the children, and to pay no bills of theirs not authorized by the executors before contracted by the child, or children; I wish the children plenty, but not waste." And the following: "In the event of the death of both of my children, mentioned above, before they have a child, or children, to inherit to them, I give to Elizabeth Higgins and Mary Ann Hughes all my estate remaining, except the annuities as above mentioned." And the following: "I appoint James Hughes (my father), Wm. Park and John Cannavan the executors of my will. I know it is an unpleasant task, but I would render either of them any service in my power. They are to be required to give no security, for they will not abuse their trust."

Of the parties named as executors, James Hughes never qualified and William Park, who qualified, resigned in 1865. John Cannavan, the remaining executor, died in 1877, without, as it appears, having resigned or concluded his trust.

The will was duly admitted to probate in Crittenden county, this State, on the 2d day of March, 1866. There seems to have been at different times a scrambling administration of the estate, conducted by various parties under appointment from the probate court in that county; but, in the view of the case taken by us, it is unnecessary to consider the legal aspect or effect of the administration in this State. It was characterized by unseemly conduct, which can not be contemplated without condemnation.

On the 16th of October, 1866, John Cannavan, the only

acting executor, sold and conveyed to Asa Hodges the land in controversy for $1,280 in cash and $1,280 payable twelve months after the date thereof, to secure which a lien was expressly reserved in the face of the deed. The appellees claim title by purchase from Hodges.

Lizzie Darragh, one of the children named in the will, died before the testator; Eliza Darragh, her mother, died in 1865; Daniel Darragh, the second child, left his residence in Memphis about 1870, and was not afterwards heard from by his relatives or friends, and is presumed to be dead. He was unmarried, and died without a child to inherit from him. The appellant, Mary Ann Winters, was a married woman when Daniel Darragh died, and so continued to the bringing of this suit.

The appellants seek (1) to recover the land conveyed by Cannavan, as executor, to Hodges; but, in the event that they are not entitled to that relief, they seek (2) to recover the sum of $1,280 with interest, being the unpaid installment of purchase money secured by him on the land, in the deed above mentioned. In support of their claim they say (1) that the will did not confer a power of sale on the executors; (2) that the power conferred could not be executed by one only of the executors; and (3) that a sale was authorized only upon stated conditions, which did not exist when it was made.

The appellees insist (1) that a power of sale was conferred by the will; (2) that it was duly executed; (3) that they purchased in good faith, and entered immediately into possession of the land, that they had continually held it for seventeen years, claiming title against the world, and that they had good title by limitation; (4) that the installment of purchase money was paid; and (5) that it was barred by limitation. The proof sustained their contention as to their possession of the land. There was trial by the court, and judgment for the defendant.

It is insisted that the judgment is wrong, and should be reversed for many reasons pressed upon our attention. In the view we have taken, it is essential for us to consider only the defense of limitation and such other matters as are involved in its correct determination.

The appellants contend that, until the death of Daniel Darragh, they had no right in possession, but only in remainder; that they were not entitled to bring any suit either for the land or the purchase money during his life; that the statute was not set in motion against them until he died, and that they brought this suit in apt time thereafter. If mistaken in that contention, their claim to the land must fail against the plea of limitation. Is it correct? Our answer must depend upon the construction of the will, for it makes a great difference whether the executors are held to have acquired the legal title for life or in fee.

1. Construction of will—Estate conveyed.

The language of the will leaves no room for doubt as to the wish of the testator in that regard. His purpose as to the disposition of his estate is clearly and concisely stated in the first clause of the will. It gives all his real and personal estate in trust to his executors, for the purpose of disposing of it to the best of their judgment, for the support and education of his two children and for the support of Eliza Darragh. The executors are directed to pay certain annuities and money bequests, the latter aggregating about ten thousand dollars. If the two children die without leaving a child or children who could inherit, the estate remaining is devised over to the appellants. The language of the grant to the executors in its ordinary acceptation would be held to convey an estate in fee. 1 Sugd., Pow., 129-30. There is nothing to limit the estate passed to a life estate only, as in the case of *Patty v. Goolsby*, 51 Ark., 61. That the natural import of the terms of the grant correctly reflect the wish of the testator, gains support from the power given them to dispose of realty and personalty alike in their best judgment, from

the directions to pay out large sums of money to supply which no other means are indicated, and from the devise over of all his estate remaining.

The phrase, "estate remaining," was evidently not used in the legal sense of a remainder, but to cover what was left after special directions were executed. The testator intended his executors to take absolutely the legal title to all his property to pay off the special bequests—to provide as he directed for Eliza Darragh and her children—and, to those ends, to sell or otherwise dispose of his property as their judgment might direct. Whatever was not sold or consumed in paying the bequests and the matured annuities, the trustees were to hold for the purposes indicated; and if both children died without a child to inherit, the estate remaining was to go to the appellants, subject to the payment of the future annuities to Eliza and his father. The grant to the executors and the power to sell are co-extensive, and neither can be restricted to a life estate or an estate less than a fee, without importing into the terms of the grant a meaning they do not express. As we have seen, there is no purpose indicated that requires such a construction, but on the contrary the natural import of the terms consists with the general purpose of the testator as indicated in the will.

The executors had no beneficial interests in the property, but, holding the legal title to the fee in trust, they were trustees for all persons who had equitable interests carved out of the fee, whether in possession or in remainder. If the conveyance by Cannavan was void, and the grantees entered under it, a right then accrued to the executors to dispossess them, and, being trustees of an express trust, they could have sued in their own names. If the deed was inoperative for want of legal authority to make it, Cannavan was not estopped to sue to dispossess persons claiming under it, as was expressly ruled by the Supreme Court of the United States in the case of *Meeks v. Olpherts*, 100 U. S., 564;

2. Estoppel—
Executor's void
deed.

Bigelow on Estoppel, 349 (5th ed.); *Pells v. Webquish*, 129 Mass., 469; *Mason v. Mason*, 140 Mass., 63; *James v. Wilder*, 25 Minn., 305.

*3. Cestui que trust—When barred.*    Seven years adverse possession was sufficient to bar the right of the trustees, they being under no disability; but whenever the right of action in the trustees is barred by limitation, the right of *cestuis que trust* thus represented is also barred. Hill on Trustees, *p. 403; Wood on Lim., sec. 208; *Smilie v. Biffle*, 2 Pa. St., 52; *Meeks v. Olpherts*, 100 U. S., *supra;* *Trimble v. Woodhead*, 102 U. S., 647; *Molton v. Henderson*, 62 Ala., 426; *Wingfield v. Virgin*, 51 Ga., 139; *Clayton v. Cagle*, 97 N. C., 300.

This rule was applied by the Supreme Court of the United States in the case of *Meeks v. Olpherts*, 100 U. S., *supra*, against the right of *cestui que trust* in a vested remainder. It has been applied similarly by other courts, and there are now no doubts that it is sound in principle and accepted by the courts.

The question of the application of the rule to claims of contingent remainders seems to have arisen in but few American cases; but it has been held by the courts of last resort in two States, that, when the trustee is barred, the *cestui que trust* holding a contingent remainder is also barred. *Edwards v. Woolfolk*, 17 B. Mon., 376; *Waring v. Cheraw & Darlington R. R. Co.*, 16 S. C., 416.

In our investigation we have found no case in which a contrary rule was favored, and as the trustee represents alike all *cestuis que trust*, whether entitled in possession or in remainder, vested or contingent, we think the same rule should apply to the claim of each of them in determining the effect upon it of the bar of the trustee's right by limitation.

The disability of the *cestui que trust* is immaterial, if the trustee is under none. Hill on Trustees, *p. 504, and cases above cited.

This court has repeatedly held that the bar by limitation

of the right of the life tenant does not affect the right of the remainderman against whom limitation will not run until his right of possession accrues. Those were cases in which the tenant for life and the remainderman each held his estate at law, and where no right of action accrued in behalf of the remainderman, until the estate for life determined. But in this case, as we have seen, the right of action accrued to the trustees for the benefit of all beneficially interested as soon as the adverse possession began, and, if they failed to institute suit, the *cestuis que trust* might have resorted to equity for the protection of their interests.

The rule does not apply to the claims of the *cestuis que trust* against the trustee, or against those who purchase trust property from the trustee in fraud of the trust.

The lien reserved in the face of the deed is, as contended, an equitable mortgage; but by its terms it only charges a lien on the land in favor of the creditor, and does not, like the mortgage, in law, invest the creditor with title to the land to be held as security. In the case of *Stephens v. Shannon*, 43 Ark., 464, this court held that the lien so reserved was but an incident to the debt thereby secured, and that the lien expired when the debt was barred by limitation.

It follows that the right to recover the land, and also the right to foreclose the lien reserved in the deed, were barred by limitation, and that the judgment below was correct.

Affirmed.

4. Vendor's lien—Limitation.