## JONES v. BURKS.

Opinion delivered November 10, 1913.

1. SALE OF CHATTELS—CONDITIONAL SALE—WAIVER.—Where appellee sold an automobile to a newspaper to be applied as a prize in a contest, and the testimony showed that appellee and his business associate were personally present, while the contest was in progress, participating in it and encouraging the contestants to believe that the car in controversy would go to the successful contestant, and that at the close of the contest, appellee was de-

clared the winner, and the car delivered to her. *Held*, error to instruct the jury to find for the defendant, in an action by appellant to recover possession of the automobile, and held that the testimony warranted a submission to the jury, and would warrant a finding that the automobile had been delivered to appellant in pursuance of the contract of sale between appellee and the newspaper, and that the sale was completed by delivery to appellant. (Page 116.)

2. SALE OF CHATTELS—DELIVERY—EVIDENCE.—In an action by the winner of a newspaper contest against appellee, for the possession of the automobile offered as the prize and won by plaintiff; *held*, evidence of statements by appellee that the contest was on the square, are admissible, showing appellee's participation in the contest, although such statements were not made in the presence of plaintiff. (Page 116.)

3. REPLEVIN—RIGHT TO RECOVERY.—Where an automobile was offered as a prize in a newspaper contest, and the automobile was sold to the newspaper by appellee, if appellee participated in the contest, and delivered the car to the winner, the winner is entitled to maintain an action of replevin for the car against the appellee. (Page 116.)

Appeal from Garland Circuit Court; *Calvin T. Cotham*, Judge; reversed.

### STATEMENT BY THE COURT.

This is a suit by appellant to replevy from the appellees an automobile, which she alleged was worth the sum of $500. Appellant alleged that she acquired title to the property as follows: She entered a contest to procure subscriptions for the Bulletin Publishing Company, a newspaper, that had offered to the person procuring the greatest number of subscribers a five-passenger automobile; that she was the successful contestant and was so declared by the Bulletin Publishing Company; that the Bulletin Publishing Company had arranged with J. A. Riggs to procure the automobile; that the automobile was advertised and paraded on the streets by Riggs and the Bulletin Publishing Company as the automobile to be given as a prize to the successful contestant; that after the contest was ended and the appellant declared the successful contestant, the appellee, Riggs, by his copartner, Shelton, delivered the machine to the appellant as her

property, but that they afterward kept the same in their possession and refused to deliver the same to the appellant. She further alleged that Riggs was financially interested in the Bulletin Publishing Company; that he knew that the company was offering to sell and deliver the automobile in controversy upon the terms presented in the contest; knew that the appellant was working to win the contest, and that the Bulletin Publishing Company was receiving the benefit of her work; that the appellee made no objection to the fact that the Bulletin Publishing Company was representing said car as its own property and the car to be delivered to the successful contestant at the termination of the contest. But, on the contrary, that he permitted the publishing company to exhibit the same as the prize to be given the successful contestant and never claimed any interest in the automobile until after the contest and after the car had been delivered to the plaintiff. She set up that Riggs was therefore estopped from asserting any claim to the automobile in controversy.

Appellee, Riggs, answered, denying the allegations of the complaint, and alleging that he at all times claimed to be the owner of said automobile, and that he had never sold it to any one or done any act that would estop him from claiming the ownership of the automobile.

The testimony in the case was substantially as follows: Appellee, J. A. Riggs, knew of the contest that was being presented through the Bulletin Publishing Company, a newspaper, for prizes, which, among other things, included a 27 Overland automobile, to be given to the one who obtained the greatest number of subscriptions to the paper. He carried an automobile to Hot Springs and took it down to the Bulletin office each day at a stated hour and left it standing before the Bulletin office twenty or thirty minutes. One day it stood there a couple of hours—the evening that the contest closed. He stated that the car belonged to him. He had a partner by the name of Shelton, who was interested with him in the sale of Overland cars, but he had no interest in

the machine in controversy. He stated that he was not interested in the contest. He knew that the contest was going on, and knew that the appellant was in the contest. He read in the paper that the Bulletin car would be exhibited at 4 o'clock at the Bulletin office every day.

Burks, the owner of the paper, said he wanted a good car, as they would be enabled to induce the people to work harder for a new car. It was the purpose of Burks to show the car in controversy as being the car that the Bulletin Publishing Company offered to the winner in the contest; but the purpose of the appellee was to sell the car for cash. When the appellee took the car to Burks he told appellee he didn't have the money for it and to bring it down again. The contest came off, Burks never paid appellee anything, and appellee kept the car. Appellee told Burks that he would not in any sense of the word consent that the car was the car of the publishing company, but he did let Burks put the banners on it, and appellee drove it up the street with the banners on. The banners read that this car was to be given to the lucky contestant in the contest given by the Bulletin company.

Witness Shelton testified that he was interested with Riggs in the Overland automobile sales in Hot Springs in April, 1911. He had no ownership in the machines, but was interested in the commission on sales. The only commission they were to get on this machine was the benefit of the advertisement that the publishing company was to carry in the paper for him and Riggs. The car was brought to Hot Springs for the Bulletin Publishing Company. The car was the capital prize in the contest. Witness stated: "I took Miss Jones out in the machine after the contest closed. She didn't ask me to deliver the machine to her; didn't say anything about wanting the possession of it. If she had I don't think I would have turned it over to her, for I had no authority to turn it over to her without an order. I didn't understand that taking her out for a ride she was asking me to turn the machine over to her. I just supposed she thought

the machine was hers and didn't know any difference, but that the machine did belong to her.''

Appellant, in her own behalf, testified, in part, that she entered into the contest, knew the terms, knew the prizes offered, and succeeded in getting $1,400. in subscriptions for the capital prize, and the Bulletin Company announced that she had won the prize and she owned the car, got it and took it to her home and showed it to her mother; bought the gasoline to run it, and would not have worked in the contest had she known the car was not the Bulletin car. She saw the car at the Bulletin office and at the garage before the contest closed.

Other witnesses testified that the car was exhibited in front of the Bulletin office as the capital prize to be given to the winner of the contest; that it was run up and down the streets of Hot Springs with streamers on it showing that it was the prize car.

One witness testified in regard to the delivery of the car as follows: ''I was there the Saturday night when the contest closed. The next day Miss Jones and myself went to the garage. Mr. Shelton said if Miss Jones would get some gasoline he would take her out for a ride. We went and got the gasoline and rode all around town. He took the automobile to Miss Jones' home and asked her if he should take it in the barn, and she said, 'No; we will keep it in the garage until we get a place for it.' Mr. Riggs was not present.''

Other witnesses testified that they had talked with Riggs about the machine before the contest closed, and that he stated that the contest was on the square, and that the winner would get the machine. At that time the machine had banners and streamers on it showing that it was the machine offered in the prize contest.

One witness testified that Riggs and Burks made a contract to the effect that Riggs would furnish him a 27 Overland car, and that Riggs told him that he could not deliver it for some time.

The court, at the conclusion of the testimony, excluded from the jury the testimony to the effect that

Riggs said that the person that won the car would get it, and also the testimony showing that streamers were placed on the car announcing that this was the car to be given away to the winner in the contest. Also testimony that the machine was at the Bulletin office on the night the contest closed. This testimony was excluded on the ground that there was nothing to show that what Riggs said was communicated to the appellant and nothing to show that she knew that the streamers were on the car; and nothing to show that she knew the car was at the Bulletin office. The appellant excepted to the ruling of the court in excluding this testimony.

The court, at the request of appellee, instructed the jury to return a verdict in his favor, to which appellant excepted. From the judgment rendered on this verdict this appeal is duly prosecuted.

*Appellant, pro se.*

1. The court erred in excluding testimony showing that Riggs stated that "the contest was on the square, and the person who won the car would get it," and testimony showing that streamers were placed on the car, and testimony to the effect that the car was at the Bulletin office the night the contest closed.

2. It was error to take the case from the jury and instruct a verdict in favor of the appellee. As between plaintiff and Burks, there was a completed purchase for a valuable consideration, there was sufficient evidence to go to the jury on the question of delivery, and Riggs is estopped by his acts and silence. 65 Ark. 215; 59 Ark. 374; 54 Ark. 311.

*Appellee, pro se.*

Appellant can not invoke the doctrine of estoppel as against Riggs unless she can show *prima facie* title and right to possession of the automobile in herself. 59 Ark. 377. Riggs is not estopped by his conduct to assert title in himself. 2 Pomeroy, Eq. Jur. 1418, note; *Id.* 1421, § § 803, 804, 805, 808, 812; 99 Ark. 263; 54 Ark. 645; 16

Cyc. 722-728; *Id.* 742, 743; 147 S. W. (Ark.) 43, 40 L. R. A. 967.

WOOD, J., (after stating the facts). The court erred in directing a verdict in favor of the appellee. As to whether or not appellee had estopped himself from claiming title and right to the possession of the automobile in controversy, was a question for the jury under the evidence.

Appellee relies upon the authority of *Watkins* v. *Curry,* 103 Ark. 414, to support the ruling of the court directing a verdict in his favor, but in that case the facts were entirely different. There we said: "There is no testimony in the record to warrant the conclusion that appellee Curry estopped himself from setting up his right to the automobile under his contract with Hughes after the latter had failed to pay the purchase money." Again, "There is no testimony whatever to warrant the finding that the appellee, at the sale, participated in the purpose of Hughes and sold the car for the purpose of having the same advertised as one of the prizes to be given away in the contest."

But here there is testimony which would have warranted the jury in finding that appellee sold the car to the Bulletin Publishing Company for the very purpose of having the same advertised as one of the prizes to be given away in the contest.

In the case of *Watkins* v. *Curry, supra,* Curry, who was seeking to recover the automobile in controversy in that suit, had a written contract reserving title until the car was paid for and he had done nothing whatever to encourage the contest which had been instituted by the newspaper while the same was in progress. Curry lived at Monticello. He did not know at the time he sold the automobile that the purchaser bought it for the purpose of awarding it as a prize in a newspaper contest in the adjoining county of Bradley. There was nothing to show that he was present when the contest was going on or that he in any manner encouraged or participated in the

contest. The most that the testimony showed was that while the contest was in progress he wrote to the paper expressing gratification at its success. But here the testimony of Shelton, a partner of Riggs in the commission on sales, showed that the only commission they were to get was "an ad. in the paper." Riggs and Shelton were personally present while the contest was in progress, participating in and encouraging the contestants to believe that the car in controversy would go to the successful contestant.

Appellee himself testified that he drove the car up and down the streets of Hot Springs; that the car bore banners and streamers with red and black letters on them, showing that the car in controversy was the contest car. While Shelton testifies that he had no authority, without an order, to deliver a car that was not paid for, yet he and the appellee both say that he was a partner with appellee and interested in the commission sales. Shelton stated that he was interested "with Mr. Riggs in the Overland automobile sales in Hot Springs in April, 1911; that the Overland model in controversy was brought to Hot Springs for the Bulletin Publishing Company." As to whether Shelton had authority to deliver the automobile was, under the circumstances, for the jury to determine.

The testimony of appellant herself and of a witness in her behalf tended to show that after the contest was over and appellant had been declared the winner of the prize that Shelton delivered to appellant the machine in controversy. This testimony, in connection with the other evidence, was sufficient to warrant the jury in finding that the automobile in controversy had been delivered to the appellant in pursuance of the contract of sale between the appellees Riggs and the Bulletin Publishing Company, and that the sale was completed by such delivery. *Shaul* v. *Harrington,* 54 Ark. 305; *Elgin* v. *Barker,* 106 Ark. 482. The testimony was sufficient to warrant a finding that the appellee had turned the car over

to the Bulletin Publishing Company for the purpose of being advertised and used as the car that would go to the winner of the contest.

Appellant succeeded in getting $1,400 subscriptions for the capital prize, which she turned over to the manager of the Bulletin Publishing Company, and she would not have done this had she known the car was not the Bulletin car.

The testimony warranted the finding that appellee, by his conduct, had held the car in controversy out to the public as the car which the Bulletin Publishing Company had offered as the prize to the successful contestant.

The court erred in excluding the testimony of witness as to the declarations of appellee to the effect that the contest was on the square and the person who won the car would get it. It was not shown that these declarations were communicated to the appellant, but the testimony tended to establish appellee's participation in the contest and his consent to the delivery of the car to appellant after the close of the contest.

For the same reasons the testimony as to the streamers on the car and as to the car being in front of the Bulletin office on the night that the contest closed, should not have been excluded.

The case turns on the question of appellee's participation in the scheme of awarding the car as a prize to the successful contestant, and of the delivery of the car to appellant. Those questions should have been submitted to the jury by appropriate instructions. If the car was not delivered to appellant she can not maintain replevin to recover possession of it. If it was in fact delivered to her with the consent of appellee, either express or implied, and he participated in the scheme, then the title passed to her and she can recover.

If there was a contract of sale completely executed by delivery to appellant, it is wholly immaterial whether

or not the contest instituted by the newspaper was a lottery.   See *Curry* v. *Watkins*, 97 Ark. 153.

Judgment reversed, and cause remanded for a new trial.