OTTER CREEK DEVELOPMENT COMPANY,
an Arkansas Limited Partnership *v.* Vernon
C. FRIESENHAHN d/b/a Friesenhahn
Development Company

87-290 748 S.W.2d 344

Supreme Court of Arkansas
Opinion delivered May 2, 1988
[Supplemental Opinion on Denial of Rehearing June 6, 1988.*]

* Hickman and Hays, JJ., would grant rehearing. Purtle, J., not participating.

*Bridges, Young, Matthew, Holmes & Drake*, by: *Jack A. McNulty*, and Of Counsel *Friday, Eldredge & Clark*, by: *Robert V. Light*, for appellant.

*Griffin Smith* and *Homer Tanner*, for appellee.

ROBERT H. DUDLEY, Justice. The only issue we need to decide is whether an option to purchase real estate violates the rule against perpetuities.

In 1971, the appellant, Otter Creek Development Company, a domestic limited partnership, was formed for the purpose of investing in and developing a tract of land at the then proposed junction of Interstate Highway 30 and Interstate Highway 430 in south Pulaski County. Otter Creek acquired a large tract of land and, on March 23, 1981, gave an option to purchase six of the

acres to appellee Vernon C. Friesenhahn d/b/a Friesenhahn Development Company. The option grants appellee one year in which to purchase the six acres, and the option is renewable annually by payment of a specified sum. There is no limit on the number of years the option can be renewed. The option further provides that it is binding on the heirs, successors, and assigns of the parties. The option provides that it will be terminated automatically if not exercised within 90 days from the date that appellee Friesenhahn receives notice from Otter Creek that a building permit is available from the City of Little Rock. The appellee has renewed the option each year and filed a declaratory judgment proceeding asking that his option be declared valid. The trial court declared the option valid. We reverse because the option violated the rule against perpetuities.

We have held that a repurchase option contained in a deed is subject to the rule against perpetuities, *Broach* v. *City of Hampton*, 283 Ark. 496, 677 S.W.2d 851 (1984), but we have never before decided whether an independent option to purchase is subject to the rule. We now hold that an independent option to purchase real estate is subject to the rule against perpetuities. One reason for the holding is that we look upon independent options to purchase real estate as creating future interests depending on the contingency of the exercise of the option. This position has been taken by all but one of the courts which considered the issue. *See* Annotation, *Independent Option to Purchase Real Estate as Violating Rule Against Perpetuities or Restraints on Alienation*, 66 A.L.R.3d 1294 (1975), and J. Gray, *The Rule Against Perpetuities* § 330 (4th ed. 1942).

The issue then becomes whether this independent option violates the rule against perpetuities. The Constitution of Arkansas forbids "perpetuities," but it does not describe them. Ark. Const. art. 2, § 19. The description comes from common law. *Broach* v. *City of Hampton*, 283 Ark. 496, 677 S.W.2d 851 (1984). Common law describes the rule against perpetuities as a rule which prohibits the creation of future interests or estates which by possibility may not become vested within the life or lives in being at the time of the effective date of the instrument and 21 years thereafter. *Id.* The agreement now before us provides that the appellee, the optionee, or his heirs or assigns can exercise the option over an unlimited number of years, subject only to

automatic termination if the option is not exercised within 90 days of the availability of a building permit, if ever that condition occurs. It is clear that on the date the instrument was signed there existed a distinct possibility that the specified contingency might not occur until after expiration of the life or lives in being plus 21 years.

██ By quoting one sentence from a federal district court case, the appellee argues that the rule is not violated when the contingency, as in this case, is capable of vesting in lives in being plus 21 years. The argument is clearly contrary to our settled law. In *Comstock* v. *Smith*, 255 Ark. 564, 566, 501 S.W.2d 617, 618 (1973), we wrote, "The interest *must* vest within the time allowed by the rule. If there is any possibility that the contingent event may happen beyond the limits of the rule, the transaction is void." In the case before us the contingent event may happen beyond the limits of the rule. Therefore, the option is void. The dissenting opinion would retroactively overrule *Comstock* v. *Smith* and decide this case on a basis neither pleaded nor asked below or in this Court. *Comstock* v. *Smith* was decided in 1973 and has now become a rule of property. This Court should rarely overrule an earlier decision when the decision has become a rule of property. *Gibson* v. *Talley*, 206 Ark. 1, 174 S.W.2d 551 (1943); *Fisher* v. *Cowan*, 205 Ark. 722, 170 S.W.2d 603 (1943); *Town of Pocahontas* v. *Central Power & Light Co.*, 152 Ark. 276, 239 S.W. 1 and 244 S.W. 712, *appeal dismissed*, 260 U.S. 755 (1922). Even if we should decide to overrule a rule of property, we could not do it retroactively, but could only give a caveat for the future. *O'Brien* v. *Atlas Finance Co.*, 223 Ark. 176, 264 S.W.2d 839 (1954). We choose not to overrule the rule of property.

Reversed and remanded for entry of a decree consistent with this opinion.

HICKMAN and HAYS, JJ., dissent.

PURTLE, J., not participating.

STEELE HAYS, Justice, dissenting. While I am tempted to join the majority and avoid the labyrinth of the Rule Against Perpetuities, I think it is a mistake to mechanically apply the Rule on the basis of a perfunctory examination of the option agreement to see if the magic words are there, i.e., "the interest will vest

within a life or lives in being plus twenty-one years." By so doing, the majority opinion ignores pronounced equities present in the case and misses the opportunity to review current trends in the law and, if warranted, adopt improvements to a Rule that has produced considerable criticism.[1]

Why should we think ourselves powerless to do that? As the majority concedes, we are not faced with a specific precedent. Nor are we bound by statutory restraints. The Rule was created by judges and judges have shaped it. Our legislature has never acted on perpetuities. It has been left to the judicial branch to hold the law of perpetuities within the framework of Article 2, § 19 of our Constitution: "Perpetuities . . . are contrary to the genius of a republic, and shall not be allowed. . . ." Thus we are free to apply it literally or modify it as common sense and justice dictate. We did exactly that in *Broach* v. *City of Hampton*, 283 Ark. 496, 677 S.W.2d 851 (1984), to which I will refer in a moment.

While there is, I concede, an aura surrounding the Rule Against Perpetuities that seems to render it immune from all but rigid application, it is not as though it has not come under fire, particularly in cases where it is applied blindly and irrespective of the equities. In *Haggerty* v. *City of Oakland*, 161 Cal. App. 2d 407, 326 P.2d 957 (1958), for example, a ten year lease to commence upon completion of a building on the premises was declared void under the Rule. The lessor, the City of Oakland, covenanted to proceed immediately with construction and the lease was to commence on the first day of the second month after completion of the building. The court held that completion of the building was uncertain and could conceivably occur later than twenty-one years after a life in being. Professor Barton Leach characterizes the decision as "absurd." "This result will be considered a reflection on the practical wisdom of courts by all laymen and also by lawyers whose thinking is not dominated by the mystique of the Rule.[2] Editorialists of the California Law

---

[1] Leach, "*Perpetuities in Perspective: Ending the Rule's Reign of Terror*," 65 Harv. L. Rev. 721 (1952). See Boyer, *Perpetuities Trend: "Wait and See," "Cy Pres," and Other Modifications*, in 5A R. Powell, The Law of Real Property § 827G at 75A-40 (rev. P. Rohan 1987) (Bibliography).

[2] Leach, *supra* note 1, at 1318.

Review termed the decision "a startling precedent."[3]

We are not dealing here with a contingent interest arising gratuitously from a bequest or a testamentary trust, or as a rider to a conveyance of some kind. The option in this case was negotiated at arm's length between knowledgeable and experienced real estate developers. Both had the benefit of competent legal counsel. More importantly, the appellant corporation, which, by this decision, is now freed of its obligations under the option, sought out the appellee to bargain for the agreement. The appellee, we are told, had an option from Kerr Properties on six acres on U.S. Highway I-30, a quarter of a mile from the tract now involved, with a major bank as lead tenant for part of that development. The appellant, in order to develop its own holdings adjacent to I-30, needed to acquire the tract held by the appellee to meet certain requirements of the Arkansas Highway Department for the construction of an exit ramp, essential to the plans of the appellant. Appellant's general partner approached appellee to release the Kerr option in exchange for the option now before us. Appellee agreed after considerable negotiations and the option agreement was signed by the appellee and the appellant. It called for a purchase price of as much as $40,000 per acre, depending on when the option was exercised.[4] In addition to the surrender of the Kerr option, appellee has paid appellant a total of $20,000 ($5,000 annually for 1981, 1982, 1983 and 1984) and $100 for 1985. The $100 due for 1986 was refused by appellant and appellee filed this suit for declaratory judgment and specific performance.

The agreement provides that the option would terminate if not exercised within ninety days after receipt of notice from the appellant that a building permit was available from the City of Little Rock. It is clear these parties assumed the conditions of the option would occur within a reasonable time. Neither had any other thought in mind, and some indication of the immediacy with which both sides regarded the agreement is evidenced by the

---

[3] Note, *Rule against Perpetuities: Application to a Lease to Commence Upon Completion of a Building*, 47 Calif. L. Rev. 197 (1959).

[4] $30,000 per acre if exercised during 1981, $35,000 if exercised during 1982, $40,000 if exercised during 1983 or thereafter.

fact that this suit had been pending for a full year before it occurred to appellant to raise the issue of perpetuities as a defense. The principle of estoppel ought to apply to this situation, though I confess I find no precedent for that view.

In *Broach* v. *City of Hampton, supra,* we upheld an option given to the City of Hampton by Charles and Ann Broach to purchase all or any part of some forty acres of land sold to the Broaches by the city. The option made no attempt to comply with the Rule Against Perpetuities.[5] We hadn't the faintest knowledge of what the parties intended beyond the naked language of the option, yet here there is a wealth of testimony as to what was intended.

Granted, in *Broach* there was no provision that the option ran to the heirs or assignees of the optionees, whereas here the agreement contains a clause binding the heirs, successors and assigns of the parties. But we can infer that the parties in this case intended that this option, if not sooner exercised, would lapse within twenty-one years from the death of the appellee. In reality it would have been exercised or lapsed long before that. Such an interpretation would be entirely consistent with what was done in *Broach,* and would be in harmony with the rule that we strive to interpret instruments so as to sustain their validity rather than to render them void. Interpretations which sustain the validity of instruments are preferred over those which cause them to fail. J. Gray, *The Rule Against Perpetuities,* § 633 (1915); Boyer, *supra* § 811[6] at 75-22; *Roemhield* v. *Jones,* 239 F.2d 492 (8th Cir. 1957); *Campbell* v. *Campbell,* 313 Ky. 249, 230 S.W.2d 918 (1950), cited with favor in *Broach.*

Furthermore, such an interpretation has support in a growing trend of cases to use less rigidity in the application of the Rule. A number of states, perhaps ten in all, in an effort to relieve the harsh effects of the Rule, have adopted a "wait-and-see" approach. Its policy is not to alter the length of the period of perpetuities, but to provide that the interest shall be valid if it does in fact vest within the Rule rather than be void if it *might* possibly

---

[5] The option was given to the city without limitation to buy "all or any part of the above-described 43.15 acre tract that [it] might use *in the future* for the city sewer system." [Our italics].

vest outside the Rule. The Rule itself remains unchanged. *See* Dukeminier, *A Modern Guide to Perpetuities*, 74 Calif. L. Rev. 1867 (1986).

Another innovation employs the doctrine of cy pres, which authorizes judicial reform of an instrument that violates the Rule. *See* Boyer, *supra*, § 827 A. Some states use a combination of the two. *Id.* § 827 C. The American Law Institute in 1978 adopted a form of both. *Restatement (Second) of Property*, § 1.5 (1983); Jacobs, *Rule Against Perpetuities*, 19 Santa Clara L. Rev. 1063.

By whatever labels, or by none at all, other courts have followed the lead of California in *Wong* v. *DiGrazia*, 60 Cal. 2d 525, 386 P.2d 817, 35 Cal. Rptr. 241 (1963), where the court was willing to look below the surface of an agreement such as the one before us, and determine from a considered, practical standpoint that today's sophisticated, arms-length commercial real estate transactions ought not to be examined vis-a-vis the Rule Against Perpetuities in the same light as family dispositions of property, which spawned the Rule. *See Rodin* v. *Merritt*, 48 N.C. App. 64, 268 S.E.2d 539 (1980); *Ryland Group, Inc.* v. *Wills*, 229 Va. 459, 331 S.E.2d 399 (1985). Still others have followed *Wong* in cases where there was *no* commercial setting, but rather, the courts made use of *Wong's* emphasis on the intent of the parties. *See, Byke Const. Co., Inc.* v. *Miller*, 140 Ariz. 57, 680 P.2d 193 (1984); *Smerchek* v. *Hamilton*, 4 Kan. App. 2d 346, 606 P.2d 491 (1980).

The case against applying the Rule to options was summed up recently by Prof. Dukeminier, Professor of Law at the University of California:

> Subjecting options to the Rule Against Perpetuities has been sharply criticized. Applying the Rule to options permits optionors to escape bad bargains when the land value rises by claiming a Rule violation, and subjects lawyers who draft options to malpractice claims if they do not limit the option's exercise to the perpetuities period. Because options are commercial transactions, they seldom endure, or are intended to endure, for many years. Options reasonably limited in time pose no threat to the public welfare; in fact, they are useful in facilitating the development of land. No good reason appears why a court should

not save an unlimited option to purchase by holding that the parties intended the option to be exercised within a reasonable time, which is necessarily less than twenty-one years.

Dukeminier, *supra*, at 1909.

We should, I believe, construe the agreement as the parties themselves undeniably contemplated and intended, that the option would either be exercised or would lapse within a reasonable time. By so doing we would effectuate the agreement and avoid a construction which violates the Rule.

The rule of property, cited by the majority, has little relevance to this case as I see it. It could hardly be supposed the rule of property gives a party the right to pursue and obtain an option agreement, reap the benefits derived from it, and then successfully repudiate it on the premise that the other party failed to include a provision on the Rule Against Perpetuities. For obvious reasons, the appellant made no such contention here or below.

HICKMAN, J., joins.

PURTLE, J., not participating.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING JUNE 6, 1988

750 S.W.2d 411

ROBERT H. DUDLEY, Justice. On rehearing, the petitioner contends that the respondent, Otter Creek Development Company, received payments under the terms of an option, and therefore, should not be allowed to assert that the option violated the rule against perpetuities. The contention is without merit. After the respondent refused to accept an option payment, the petitioner filed a suit seeking a judgment declaring that the option

was valid. The respondent answered that the option was void because it violated the rule against perpetuities. The respondent may properly assert such a defense. When a deed is invalid because it is contrary to public policy, and therefore void, the grantor is not estopped to assert its invalidity. *Chase* v. *Cartwright*, 53 Ark. 358, 14 S.W. 90 (1890); 28 Am. Jur. 2d *Estoppel and Waiver* § 7 (1966).

Petition denied.

PURTLE, J., not participating.

HICKMAN and HAYS, JJ., would grant.

DARRELL HICKMAN, Justice, dissenting. This case was not about the rule against perpetuities. It was about the conduct of one of the partners and whether he could bind the other partners by his actions.

As a "throw away" argument, the appellant said the agreement violated the rule against perpetuities. Both parties treated this argument perfunctorily in their briefs. However, the majority found the technical legal argument appealing and went off down a false path, ignoring what this case was really about.

The trial court quickly saw through this legal smoke screen and held that the appellants were estopped to void this document, as they should be, having accepted the benefits from it.

The majority did not deal with the estoppel question in its first opinion and does so only indirectly on rehearing. We cannot reverse this trial court's finding regarding estoppel unless we find it was clearly wrong, because it entailed factual findings. *See* 31 C.J.S. *Estoppel* § 163 (1964); *Ray Dodge, Inc.* v. *Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972); *Jones* v. *Burks*, 110 Ark. 108, 161 S.W. 177 (1913); *Lary* v. *Young*, 13 Ark. 401 (1853); *see also* A.R.C.P. Rule 52(a).

The case of *Chase* v. *Cartwright*, 53 Ark. 358, 14 S.W. 90 (1890), cited in the majority opinion on rehearing, is not on point or controlling.

326

This case was incorrectly decided and I would grant the rehearing.