Dr. Leslie Wyatt, President Arkansas State University P.O. Box 10 Jonesboro, AR 72467-0010
Dear Dr. Wyatt:
I am writing in response to your request for my opinion on a question arising from the following reported facts:
 Arkansas State University is contemplating a land acquisition at fair market value based on a recent appraisal. The transaction is with a private 501 — c-3 Foundation in Jonesboro, the Arkansas State College Foundation. The Directors of the Foundation have inserted the following paragraph in their counteroffer to the University:
 "The Directors of the Foundation are insistent that they want to ensure that the lands that the Foundation currently own [sic] will always remain for the benefit of the University and not be disposed of for other purposes. In all previous transfers of title to land a reversionary clause appears in the deed which was provided by the Foundation and accepted by the University. Perhaps there are other legal means for the University to provide desired assurance."
 The Foundation wishes that the land revert back to the Foundation if the University ceases to exist or use it for its educational purpose. I am advised that the Foundation donated properties to ASU under these conditions, and I can understand why this revision was acceptable.
 While it may not be a "Best Practice" in business to pay fair market value for land with such a restrictive covenant, I am more concerned about what is legal under State law for State agencies and Higher Education Institutions in this case.
These circumstances have prompted you to pose a question I will paraphrase as follows:
 Does Arkansas State University have legal authority to purchase land at fair market value from the Arkansas State College Foundation, a private nonprofit organization, in light of the fact that the deed would contain a restrictive use covenant requiring the land to revert back to the Foundation if the University ceases to exist or to use the land for educational purposes?
RESPONSE
Arkansas State University ("ASU") is statutorily authorized to purchase land pursuant to A.C.A. § 6-62-302. I am unaware of any provision of law that would necessarily preclude ASU from purchasing property subject to a reversionary clause of the sort referenced in your request. A reviewing court would presume that the purchase was made for a proper public purpose and that the consideration paid was reasonable. Your question is essentially whether ASU may purchase a fee simple determinable interest in property with a possibility of reverter for the fair market price of a fee simple absolute. Although answering this question will ultimately entail conducting a factual inquiry into the adequacy of the consideration exchanged, I believe the board has considerable discretion in determining what constitutes reasonable consideration in any given transaction. In my opinion, so long as the consideration paid were not so grossly disproportionate as to amount to fraud, the transaction would pass constitutional muster.
Section 6-62-302 of the Arkansas Code (Supp. 2003) provides in pertinent part:
 (a) Subject to and in accordance with the terms of this subchapter, the Boards of Trustees of the University of Arkansas, Arkansas State University, University of Central Arkansas, Henderson State University, Arkansas Tech University, and Southern Arkansas University, respectively, are authorized and empowered as public agencies of the State of Arkansas to:
 (1) Construct buildings, structures, parking facilities, or other improvements which the board deems proper or suitable for the school and to purchase sites therefor, if necessary;
 (2) Purchase for such purpose buildings already constructed and the tracts of land on which they are situated;
* * *
 (b) No board of trustees of such public institutions of higher education shall be required to obtain any prior review, consultation, approval, assistance or advice from Arkansas State Building Services for projects undertaken based on the foregoing powers and authority; provided, however, nothing herein shall prevent any board of trustees of such public institutions of higher education from entering into an agreement with Arkansas State Building Services to provide review, consultation, approval, assistance or advice for such projects. However, public institutions of higher education exempt from project review, consultation, approval, assistance or advice of Arkansas State Building Services shall remain subject to other laws governing public works. . . .
I gather from your question that you are asking whether Arkansas State University ("ASU"), as a public institution, is authorized to purchase a fee interest determinable with a possibility of reverter in the property at issue for the fair market price of a fee interest absolute.[1] As a general proposition, in order to avoid offending the constitution, any use of public funds must serve a "public purpose." In Chandler v. Boardof Trustees of the Arkansas Teacher Retirement System of the State ofArkansas, 236 Ark. 256, 365 S.W.2d 447 (1963), the Arkansas Supreme Court declared unconstitutional several statutes that permitted employees of the Arkansas Education Association (the "AEA") and the Arkansas Teacher Association (the "ATA") to participate in the State Teacher Retirement System. The court concluded that the AEA and the ATA were private organizations, rather than agencies of the state, and that any use of tax dollars to fund its members' retirement offended the Arkansas Constitution's privileges and immunities clause (art. 14, § 3), the illegal exaction clause (art. 16, § 13) and the due process clause (art. 2, § 8). In so holding, the court offered a concise statement of the law applicable to the use of public funds for a private purpose:
 No principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose. A century ago the basic doctrine was simply stated in the leading case of Brodhead v. City of Milwaukee, 19 Wis. 624:" The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute."
Chandler, 236 Ark. at 258, quoting Brodhead v. City of Milwaukee,19 Wis. 624 (1865). Accord, Chapman v. Bevilacqua, 344 Ark. 262,42 S.W.3d 378 (2001); Clark v. State, 308 Ark. 84, 824 S.W.2d 345 (1992) (Brill, J., concurring); Brewer v. Hawkins, 241 Ark. 460, 408 S.W.2d 492
(1966); Samples v. Grady, 207 Ark. 724, 182 S.W.2d 875
(1944).
A primary consideration in "public funds" cases appears to be whether those who contributed the money received the intended benefit therefrom, or whether, by contrast, a private individual or entity received the benefit. This consideration is largely a question of fact that can only be answered in light of all the evidence bearing on the particular case. However, so long as a court determined that a public expenditure was not intended to benefit a private entity, it would probably not undertake any elaborate second-guessing of the public entity's decisions regarding the adequacy of consideration. Sales of public property for as little as one dollar have been upheld when there was no fraud and there was consideration for the sale other than the payment of money, such as, for instance, "public advantage" or economic benefits to the community. See
Ark. Op. Att'y Gen. No. 92-022, citing Chamber of Commerce v. PulaskiCounty, 113 Ark. 438, 170 S.W. 1165 (1914) and City of Blytheville v.Parks, 221 Ark. 734, 255 S.W.2d 962 (1953). In my opinion, the obverse of this principle is that the administrators of a public entity will be afforded wide discretion in determining what constitutes adequate consideration for the purchase of property devoted to a public purpose. I believe this conclusion is consistent with the legislature's grant to the ASU board of discretion to make whatever purchases it "deems proper or suitable for the school" without the approval of the Arkansas State Building Services applicable to other public institutions. A.C.A. §§6-62-302 and 22-2-113.
As one of my predecessors remarked in considering the comparable situation of county expenditures made for a public purpose:
 Once a general county purpose is shown, I believe the appropriation will be upheld unless it can be established that the benefits to be received by the county are so grossly inadequate as to constitute fraud. See generally Gordon v. Woodruff County, 217 Ark. 653, 232 S.W.2d 832 (1950) and Chamber of Commerce v. Pulaski County, 113 Ark. 439, 170 S.W. 1165 (1914).
Ark. Op. Att'y Gen. No. 96-358. As the court noted in Pfeifer v. City ofLittle Rock, 346 Ark. 449, 468, 57 S.W.3d 714 (2001):
 Overall, this court presumes that public officials will act lawfully and sincerely in good faith in carrying out their duties, and that they will not engage in subterfuge to accomplish their goals. Cotten v. Fooks, 346 Ark. 130, ___ S.W.3d ___ (2001); Commercial Printing Co. v. Rush, 261 Ark. 468, 549 S.W.2d 790 (1977).
Should the ASU board elect to proceed with the purchase of the property referenced in your request, I believe the board would enjoy the full benefit of this presumption. In my opinion, so long as the consideration paid for the property at issue were not so inordinate as to reflect a diversion of public funds to a private purpose, the transaction would pass constitutional muster. However, only a finder of fact could make this determination based upon a consideration of all the attendant circumstances.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] As pointed out in Collins v. The Church of God of Prophecy,304 Ark. 37, 40, 800 S.W.2d 418 (1990), a fee interest determinable is an estate in property pursuant to which the grantor retains a reversionary interest that will be triggered by the grantee's failure to observe a condition subsequent to the conveyance. Compare Bond, County Judge v.Kennedy, 213 Ark. 758, 767, 212 S.W.2d 336 (1948) (characterizing a conveyance as in fee simple absolute when contract contained an "optionary clause," as distinct from a "reverting clause," entitling the grantor to repurchase the property for $60 if the property were not used for school purposes). Compare also A.C.A. § 14-16-104(a)(2) (Repl. 1998) (expressly authorizing counties to accept conveyances from the federal government containing reversion clauses "in case the real estate ceases to be used for the purposes for which conveyed").
With respect to an open-ended reversionary interest of the sort described in your request, the question arises whether the conveyance might offend the common-law "rule against perpetuities," which the court in Collins
stated as follows:
 The Constitution of Arkansas prohibits "perpetuities" but it does not define or describe them. Instead, the common law is the source of the Rule Against Perpetuities. See The Duke of Norfolk's Case, 3 Ch. Cas. 1 (1681). That longstanding rule prohibits the creation of future interests or estates which by possibility may not become vested within a life or lives in being at the time of the effective date of the instrument and 21 years thereafter. See Otter Creek Development Co. v. Friesenhahn, 295 Ark. 318, 748 S.W.2d 344 (1988).
304 Ark. at 39. The court further noted: "We consider such an interest as being vested at the time of its retention and therefore not subject to the Rule Against Perpetuities."