LONOKE *v.* BRANSFORD.

Opinion delivered November 24, 1919.

1. WORDS AND PHRASES—"PRICE."—"Price" implies value, usually in money.

2. WORDS AND PHRASES—PUBLIC UTILITY FRANCHISE—"AT THE SAME STIPULATED PRICE."—A renewal franchise to a water company provided that water was to be furnished "at the same stipulated price." No specific or definite amount was fixed. *Held,* the phrase referred to that rate fixed by the franchise which this one was superseding.

3. PUBLIC UTILITY — WATER RATES — DISCRIMINATION.—A franchise which required that water be furnished to all residences and business houses at $1 a month and to livery stables at $1.50 a month, irrespective of the amount of water used, is not discriminatory.

4. PUBLIC UTILITIES — CONTRACT WITH MUNICIPAL CORPORATION —
RATES—CONFISCATION.—Contracts between municipal corpora-
tions and public utilities are placed in the same category with
contracts between individuals. The enforcement thereof can not
be interrupted upon the ground that they will result in the bank-
ruptcy of the utility any more than the enforcement of contracts
by individuals could be interrupted on such ground. The only
remedy for such a condition is a modification of the rate by mu-
tual agreement or consent by the municipal corporation and the
public utility.

5. PUBLIC UTILITIES—REVISION OF RATES.—Kirby's Digest, sections
5445-48, confer upon a municipal corporation the power only to
revise downward an unreasonable rate established in a fran-
chise without the consent of the public utility.

Appeal from Lonoke Chancery Court; *John E. Mar-
tineau*, Chancellor; reversed.

*Trimble & Trimble* and *Chas. A. Walls,* for appellant.

1. The decree should be reversed because (1) there
was a *bona fide* contract between Bransford & Son and
Lonoke whereby water was to be furnished during the
life of the contract at a stipulated price and (2) Kirby's
Digest, sections 5445-5448, inclusive, do not authorize ap-
pellee or the court to fix arbitrarily his own rates, and (3)
there has been no mutuality of contract between the town
of Lonoke and Bransford & Son upon any other rate
than that set out in the original contract and neither the
court nor appellee could arbitrarily fix a rate without the
consent of the town council. To "stipulate" means to
make an agreement, bargain, settle terms, etc. 7 Words
& Phrases, 6659; 113 Fed. 718. See also 88 N. E. 785.
"Stipulated" as used in the contract of 1905 clearly re-
ferred to some amount that had been definitely fixed and
agreed upon. This is conclusive of the fact that $1 a
month for residences was the *stipulated* price referred
to.

2. The rates having been fixed by the city council,
the presumption is that they are reasonable, and the bur-
den of proof is upon the company to show affirmatively
that they are not. 99 Ark. 178; 54 *Id.* 112.

3.   The finding of the court is that the contract is not governed by the rules applicable to contracts of individuals is not according to law.   80 Ark. 108; 211 S. W. 664; 206 U. S. 768.   The court erred in enjoining the council from enforcing the rate which has been in force for 18 years.

*J. B. Reed* and *Carmichael & Brooks,* for appellees.

1.   It becomes a mere matter of ordinance provision as to the fixing of the rate, and if it is unreasonable the court has a right to enjoin it.   3 Dillon on Mun. Corp. (5 Ed.), § 1327; 80 Ark. 108; 99 *Id.* 178.   The law is clear that a franchise can not be repealed by a contract between a member of a town council and a public utility. 211 U. S. 265.

2.   If there was a contract, as appellant claims, it would be inconsistent with the franchise and beyond the power of the committee of the town council to make and could not mean that the public utility should furnish an unlimited amount of water to one person and a smaller amount to another at the same price.   The committee was not given power to fix the price at $1 and the rate of $1 was erased.   It put the contract in the language of the resolution.

3.   **The court had a perfect right** and full power to enjoin the carrying out of such a contract.   If the rates **were unreasonable and confiscatory** the court had the right to set them aside.   There must be mutuality in the contracts, **not only in the making** but enforcement thereof. Kirby's Digest, § 5445.   The council may raise or lower the rates, but courts can modify a contract at the instance of a public utility.   A binding contract must be binding on both parties.   101 Ark. 223.   The statute gives the town the right to fix the rate.   99 Ark. 178 settles this case in favor of appellee.   204 S. W. 386.   See also 225 Fed. 920; 206 U. S. 496; 194 *Id.* 517; 246 *Id.* 178; 248 *Id.* 429; 244 *Id.* 13; 204 S. W. 1074; 207 *Id.* 799; 199 *Id.* 999; 205 *Id.* 36; 192 *Id.* 958; 102 Atl. Rep. 901; 211 S. W. 664.

HUMPHREYS, J. Appellee instituted this suit against appellant in the Lonoke Chancery Court to enjoin the city and its officers from enforcing a water rate of $1 per month for residences, $1.50 for livery stables, and $2 for hotels and inns, upon the grounds, first that appellee had not entered into a contract with appellant to furnish water at the rates specified; second, that, if such a contract was made, it was inconsistent with the franchise granted to the predecessors of appellee; and, third, that, if such a contract were made, and was consistent with the franchise, it was confiscatory of appellee's property, and not enforceable as a contract. Appellant filed answer, denying each material allegation in the complaint.

The cause was submitted to the court upon the pleadings, ordinance No. 33 granting a water franchise to A. J. Edmondson and W. H. England, predecessors of appellee, the written contract between appellees and appellant pertaining to the water rate, certain minutes and records of the town, and the testimony of certain witnesses, upon which the issues were found for appellees and a judgment rendered by the court perpetually enjoining the enforcement of the rates fixed by the town council of Lonoke. From the findings and decree of the chancery court, an appeal has been prosecuted to this court, and the cause is before us for trial *de novo*.

It is first insisted by appellant that, according to the weight of the evidence, the predecessors of appellees entered into a contract with the town of Lonoke to furnish the inhabitants thereof water at the rate of $1 for residences, $1.50 for livery stables and $2 for hotels and inns, and that appellee renewed the contract at the same rate in 1905. The written contract entered into between appellant and appellee in 1905 contains the following provision: "It is further agreed that said parties of the second part will continue to furnish water at the same stipulated price until the termination of their franchise."

R. L. Sawyer, serving as an alderman when the water franchise was granted to Edmondson and England,

appellee's predecessors, testified that the rate was fixed by resolution at $1 per month for residences, and later amended by fixing the rate on livery stables and hotels at $1.50 per month.

Charles G. Miller, who procured the franchise for Edmondson and England, testified that it was procured on the understanding that the public utility would furnish water at the rate of $1 per month for residences and business houses, and $1.50 per month for hotels and livery stables; that the town refused to grant the franchise on any other condition; that he subsequently negotiated the sale of the plant to Bransford and Daniels for $1,000 less than the original price asked, on account of the low water rate theretofore agreed upon.

T. M. Fletcher, mayor in 1905, 1906 and 1907, testified that the town owned the plant at the time he was mayor, and fixed the rate at $1 a month to the consumer; that, about three years after he retired as mayor, the town sold the plant; that, after the change, the rate remained the same, except for livery stables and hotels.

J. M. Gates, mayor of Lonoke for five years, testified that he was familiar with the water rates fixed by the council, the same being $1 per month for residences and business houses, and $1.50 per month for livery stables and hotels.

The mayor of Lonoke, at the time he gave his evidence, testified that W. Y. Bransford discussed the question of raising the water rates with him in June, 1918; that the rate had always been $1 per month for residences.

According to the record, the plant was originally owned by the town until 1900. In that year, it passed by sale from the city to Edmondson and England; then, to Bransford and Daniel; then to Bransford and Hicks; then to appellee, a partnership. From 1895 until the institution of this suit, each successive owner furnished water to residences at the rate of $1 per month.

E. M. Spencer, Charles G. and Jesse Miller all testi-
fied that the clause "at the same stipulated price," used
in the Bransford and Daniels contract of 1905, had refer-
ence to the rate agreed upon and fixed by resolution of
the town council at the time the franchise was granted,
and as amended thereafter.

The minutes and records of the town, prior to 1905,
were destroyed.

W. Y. Bransford testified that no rate was ever
agreed upon or fixed by resolution or ordinance; that,
at the time the contract of 1905 was entered into, the
rate of $1 per month for residences was inserted in the
original draft but was stricken out before he signed the
contract.

The franchise contained the following provision:
"A. J. Edmondson and W. H. England shall furnish free
of cost to said town of Lonoke any and all water it may
need for use, and furnish water to the citizens of the town
of Lonoke at a uniform rate and without discrimination
between persons."

(1-2) We think it established by the weight of evi-
dence that the clause "at the same stipulated price,"
used in the contract of April 24, 1905, related to some
fixed, definite amount theretofore existing. Price implies
value, usually in money. The ordinary meaning of the
words "stipulated price" is an agreed or fixed amount of
money for a commodity, and preceded by the word
"same" necessarily mean a definite amount or rate pre-
vailing in the past. No specific or definite amount was
fixed in the franchise. Free water must necessarily be
without price, and a uniform, non-discriminatory rate
lacks the element of an amount certain, indicated by the
use of the words "stipulated price." So we think the
only reasonable conclusion deducible from the evidence
is that the clause "at the same stipulated price," as used
in the Bransford and Daniels contract, related to the
rates fixed in the lost resolution or ordinance and amend-
ments thereto. According to the evidence, that rate was
$1 per month for residences and business houses, and
$1.50 per month for livery stables and hotels.

(3)   Appellee, however, upholds the decree of injunction on the theory that such a contract is unenforceable as being in conflict with the provision of the franchise requiring water to be furnished at a uniform rate and without discrimination. The record disclosed that the amount of water used by the consumers ranged from 500 to 55,000 gallons per month. From the fact that one citizen might obtain 500 gallons and another 55,000 gallons per month for $1, the conclusion is drawn by appellee that the rate is not uniform, but discriminatory. According to the evidence of Charles G. Miller, the town council refused to amend the franchise until the rate of $1 for residences and business houses was agreed upon, and granted the charter upon that condition only. His statement in this regard is supported by the great weight of the evidence. The phrase "uniform and without discrimination," used in the charter, must be read in the light of this evidence. When so read, it clearly means that every residence and business house using water must pay $1 per month for water, irrespective of the amount used. In other words, that the public utility could not discriminate in price between consumers on account of the quantity of water used by each. We are unable to find anything in the record from which an inference may be drawn that the words were used in the franchise in contemplation of metering the town.

(4)   An attempt is made by the appellee to sustain the injunction on the ground that it would work a confiscation of appellee's property. Appellee is not sustained in this position by the adjudications in this State. Under the adjudications of this State, contracts between municipal corporations and public utilities are placed in the same category as contracts between individuals. The enforcement thereof can not be interrupted upon the ground that they will result in the bankruptcy of the utility any more than the enforcement of contracts by individuals could be interrupted on such ground. *Lackey* v. *Fayetteville Water Co., 80 Ark. 108; *Little Rock Ry. & Elec. Co.* v. *Dowell,* 101 Ark. 223; *Arkansas Light & Power Co.* v. *Cooley,* 138 Ark. 390.

(5)   The only remedy for such a condition is a modification of the rate by mutual agreement or consent by the municipal corporation and public utility.   Sections 5445-48, inclusive, of Kirby's Digest, only confer the power upon a municipal corporation to revise downward an unreasonable rate established in a franchise without the consent of the public utility.   It therefore follows that the public utility must acquiesce in the water rates agreed upon in its contract with the city, unless it can obtain relief by application to the proper authorities.

For the error indicated, the decree is reversed, and the cause is remanded with directions to dissolve the injunction and dismiss the petition.

Mr. Justice SMITH dissents.