POCAHONTAS *v.* CENTRAL POWER AND LIGHT COMPANY.

Opinion delivered February 27, 1922.

1. MUNICIPAL CORPORATIONS—FRANCHISE CONTRACTS.—Where · a municipal corporation by an ordinance gives its consent to a public service corporation to enter the municipality and furnish electricity or gas to consumers upon terms and conditions which are . accepted by the corporation, such action by both parties constitutes a contract, and the rights of the parties thereunder are to be determined by the contract itself.

2. STATE—REGULATION OF PUBLIC UTILITIES.—While franchise rate contracts as between the parties themselves are binding, the right to regulate the rates of public service corporations is vested in the State in the exercise of the police power, and may be exercised directly or through a commission created by it, or the State may delegate such power to a municipality.

3. MUNICIPAL CORPORATIONS—MODIFICATION OF FRANCHISE RATES.— A franchise granted by a city to a public service corporation to furnish water or electric lights to consumers in a city, being a contract between the city and the corporation, may be modified by an ordinance raising the water and light rates, when accepted by the corporation.

4. MUNICIPAL CORPORATIONS—BINDING NATURE OF FRANCHISE CONTRACTS.—Contracts between municipal corporations and public utilities are placed in the same category with contracts between individuals, and the enforcement thereof can not be interrupted upon the ground that they will result in the bankruptcy of the utilities, any more than the enforcement of contracts by individuals could be rescinded on such grounds.

5. STATES—CONTROL OVER PUBLIC UTILITIES.—The power conferred by Acts of 1919, p. 411, to change the franchise rates of public utilities was a valid exercise of the police power of the State, and

the rights of municipal corporations and public utilities under the franchises granted to the latter gave way to the sovereign power of the State.

6.  MUNICIPAL CORPORATIONS—FRANCHISE RATES.—Where the Corporation Commission first granted an application by a public utility operating within a municipality to increase its charges over the franchise rates, but subsequently set aside such order, and subsequently the Corporation Commission was abolished by General Acts 1921, p. 177, and jurisdiction to regulate public utilities within their limits was restored to municipalities, this had the effect of restoring the old franchise rates.

7.  MUNICIPAL CORPORATIONS—FIXING RATES OF PUBLIC UTILITIES— APPEAL.—Under Gen. Acts 1921, p. 177, § § 17, 19, providing that rates for public utilities fixed by municipalities shall be final and binding, subject to the right of appeal by the public utility or by any person or corporation aggrieved, and § 23, providing that municipalities shall not be deprived of the benefits or rights accruing under any franchise or contract, *held* that a public utility operating within a municipality can appeal to the courts for relief from rates deemed unreasonable or discriminatory where the municipality fixed rates lower than the franchise rates, or where there were no franchise rates, but not where the municipality fixed the rates provided for in the franchise of the public utility.

8.  MUNICIPAL CORPORATIONS—POWER TO FIX RATES OF PUBLIC UTILITIES.—Under Crawford & Moses' Dig., § 7565, providing that municipal corporations shall have power "to authorize the construction of gas and electric works," the Legislature intended to include the authority to agree upon the rates to be charged during the life of the franchise.

Appeal from Randolph Circuit Court; *Dene H. Coleman,* Judge on exchange; reversed.

### STATEMENT OF FACTS.

The Central Power & Light Company brought this suit in the circuit court under the statute against the mayor and common council of the town of Pocahontas to review and set aside an order made by them prescribing the rates for electric current for light and other purposes, to consumers in the town of Pocahontas, and to enjoin them from putting into effect said rates.

L. R. Martin and other consumers of electricity in the town of Pocahontas were made parties defendants

to the action because they had brought a suit in the chancery court against the Central Power & Light Company to restrain it from putting in force a schedule of increased rates.

On the third day of December, 1912, the town of Pocahontas, by an ordinance, granted to W. H. Skinner the exclusive right to operate and furnish electric lights to said town and the inhabitants thereof for a period of twenty-five years.  W. H. Skinner accepted the franchise granted by said ordinance and transferred his rights thereunder to the Central Power & Light Company, a corporation, which succeeded to his rights in the premises.

The Central Power & Light Company applied to the Arkansas Corporation Commission for an increase of rates for furnishing electric light to the town of Pocahontas and its inhabitants.  The Arkansas Corporation Commission at first granted to said Central Power & Light Company an increase of rates, but no surrender of franchise was offered by said company, or demanded by said Arkansas Corporation Commission.

On application of the town of Pocahontas, the Arkansas Corporation Commission set aside its order and granted a re-hearing in the matter.  Pending the re-hearing, the act of the Legislature of 1919, creating the Arkansas Corporation Commission, was repealed and an act passed creating the present Railroad Commission. The latter act was approved February 15, 1921, and under it municipalities were granted the power to fix the rates to be charged by public utility companies operating in their limits, under certain conditions which are prescribed and provided for in the act.  When the Arkansas Corporation Commission set aside its order granting to said Central Power & Light Company the right to increase its rates, it provided that the company might continue the new rates in force for a period of six months upon executing a bond provided for by the statute.

On April 4, 1921, the town council of Pocahontas passed a resolution fixing the rates to be charged by said Central Light & Power Company at the amount authorized by the franchise under which it operated. This was the amount which the company had charged prior to the order made by the Arkansas Corporation Commission. The company appeared and opposed the change of rates by the town council.

The Central Power & Light Company then appealed to the circuit court, and, hearing the proof, the circuit court found that the Central Power & Light Company was entitled to an increase of rates, and the court fixed the amount of the increase. The court found that the Central Power & Light Company never surrendered its rights under its franchise to the Arkansas Corporation Commission. The court further found that the Arkansas Corporation Commission had never issued to the Central Power & Light Company an indeterminate permit, as provided by the act creating said commission.

A judgment was rendered accordingly, and to reverse that judgment the town of Pocahontas has duly prosecuted an appeal to this court.

*Schoonover & Jackson* and *Pope & Bowers,* for appellants.

The franchise granted by the town of Pocahontas to W. H. Skinner, and accepted by him, constituted a contract, and was binding on both parties. 141 Ark. 18; 80 Ark. 108; 211 S. W. 664; 101 Ark. 223; McQuillan on Municipal Corporations, vol. 4, par. 1672.

A contract once entered into cannot be changed except by consent of parties, and neither can that change be affected by legislative enactment.

There was no legal or sufficient proof to show that the rates fixed were unreasonable.

A city council, in the exercise of its legislative power in granting a water and light franchise, is vested with a discretion which can be controlled by the courts only after abuse. 138 Ark. 390.

*Ponder & Gibson,* for appellee.

Defendant waived its rights under section 23 of act. 124 of the Acts of 1921. Contractual conditions are subject to waiver and estoppel. 28 Cyc. 683; 131 Mich. 52; 99 N. Y. App. Div. 588. A contract may be modified or a waiver of conditions can be made by a municipal corporation. 122 Fed. 332; 1 Dillon on Municipal Corporations (4th Ed.) sec. 451; 21 N. Y. 199. Contracts between municipalities and public utilities are governed by the same rules of law as those governing contracts between private corporations and individuals. 28 Cyc. 679; 138 Ark. 394. A contract between a municipality and a public service company may be modified by mutual consent. McQuillan on Mun. Corp., vol. 4, par. 1717; 101 Ark. 223.

The construction placed upon section 23 of the act is not the proper one. 101 Ark. 204.

A statute should be construed so as to best answer the intention the maker had in view. 3 Ark. 285. See also on the Construction of Statutes, 5 Ark. 536; 13 Ark. 52; 25 Ark. 101; 27 Ark. 419; 76 Ark. 303; 31 Ark. 119; 115 Ark. 194; 120 Ark. 510; 102 Ark. 205; 82 Ark. 392; 186 S. W. 604; 124 Ark. 20; 124 Ark. 475.

The act was legal and binding. 145 Ark. 205; 54 Ark. 112.

All contracts made by municipalities and utilities are made subject to regulation under the police power. 141 Ark. 18.

Rates fixed by the city council are presumed to be reasonable. 54 Ark. 112.

The plaintiff is entitled to a reasonable return on the value of its property devoted to public use. 212 U. S. 19; 141 Ark. 25; 104 Ark. 227; 105 Wis. 651; 138 Ark. 394; 145 Ark. 205.

HART, J., (after stating the facts). This is an appeal from a judgment of the circuit court under a holding that the electric light rates established by the town

of Pocahontas under the provisions of act No. 124 of the General Assembly of 1921, after due notice to the Central Power & Light Company, are unreasonable and confiscatory, and approving the rate named by said Central Power & Light Company and put in force by it in furnishing electricity to consumers in the town of Pocahontas.

The Arkansas Corporation Commission was abolished by the act in question, and jurisdiction was conferred upon municipal councils to regulate the rates of public utilities operating within the limits of such municipalities.    General Acts of 1921, p. 177.

We will first review the general principles of law governing cases like the present one.    It is elementary law that when a municipal corporation by an ordinance gives its consent to a public service corporation to enter the municipality and furnish electricity or gas to consumers upon terms and conditions which are accepted in writing by the public service company, such action by both parties constitutes a contract, and the rights of the parties thereunder are to be determined by the contract itself.

It is equally well settled that while franchise rate contracts as between the parties themselves are binding, still the right to regulate the rates of public service corporations is a governmental power vested in the State in its sovereign capacity.    The reason that the regulation of such rates is an attribute of sovereignty is that such regulation is for the purpose of promoting the health, comfort, safety, and welfare of society and is therefore an exercise of the police power.    The State may exercise the power directly or through a commission created by it; or the State may delegate such power to a municipality.    The right of the State to regulate the rates of public service corporations by compulsion under the police power, should not be confused with the right of a city to exercise its contractual power to agree with a public service company upon the terms of a franchise or a change of rates under it.

This distinction has been recognized by this court in its various decisions on the subject. In *Ark. Light & Power Company* v. *Cooley,* 138 Ark. 390, it was held that a franchise granted by a city council to a public service company to supply water and light to the city and its inhabitants at certain rates, when accepted, becomes a contract between the municipality and the public service company, and the terms and conditions therein are binding on the municipality and company.

The court further held that a franchise granted by a city to a public service corporation to furnish water and electric lights to consumers in the city, being a contract between the city and the corporation, may be modified by an ordinance raising the water and light rates, when accepted by the corporation.

Again, in *Lonoke* v. *Bransford,* 141 Ark. 18, the court held that contracts between municipal corporations and public utilities are placed in the same category with contracts between individuals, and that the enforcement thereof can not be interrupted upon the grounds that they will result in the bankruptcy of the utilities, any more than the enforcement of contracts by individuals could be rescinded on such grounds.

The court further held that the only remedy for such a condition was a modification of the rates by mutual consent, and that under the statute then existing a municipal corporation only had the power to revise downward rates established in a franchise without the consent of the public utilities.

The facts presented by the record in these cases occurred before the Legislature of 1919 created the Arkansas Corporation Commission and conferred upon it jurisdiction to regulate rates of public service corporations. Chap. 37 of Crawford & Moses' Digest.

The power conferred by that act on the Corporation Commission to change the franchise rates of public utilities and not to impair the obligation of contracts was a valid exercise of the police power of the State. Such

statutes have been held by the Supreme Court of the United States not to be repugnant to the contract or due process of law clauses of the United States Constitution.

In *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 248 U. S. 372, the facts were that the State had fixed reasonable rates to be charged by a corporation for supplying electricity to the inhabitants of a city, which superseded lower rates agreed on in an existing time contract made previously between the company and a consumer, and the court held it to be a legitimate effect of a valid exercise of the police power, not impairing the obligation of the contract or depriving the consumer of property without due process of law.

The court quoted with approval from the Legal Tender Cases the following: ''Contracts must be understood as made in reference to the possible exercise of the rightful authority of the Government, and no obligation of a contract can extend to defeat the legitimate Government authority.''

The Legislature of 1919, having created the Arkansas Corporation Commission, and having given it power to regulate the rates of public utilities, the rights of municipal corporations and public utilities under the franchises granted by the former to the latter gave way to the sovereign power of the State.

Under the provisions of the act of 1919, the Central Power & Light Company applied to the Arkansas Corporation Commission for an increase of rates, which was granted by the Commission. Before the decision became final, upon the petition of the town of Pocahontas, the Arkansas Corporation Commission set aside its order giving an increase of rates to the Central Power & Light Company and granted the town of Pocahontas a rehearing in the matter. Pending the rehearing, the Legislature of 1921, by an act approved February 15, 1921, abolished the Arkansas Corporation Commission and created the Arkansas Railroad Commission. General Acts of 1921, p. 177.

The public service corporations over which the jurisdiction of the Commission shall extend is specifically stated in section 5 of the act, and jurisdiction by municipalities to regulate public service corporations of public utilities operating within the limits of such municipalities is conferred by § 17 of the act. The Arkansas Corporation Commission had set aside its order giving an increase of rates to the Central Power & Light Company, and granted a rehearing in the matter to the town of Pocahontas, at the time it was abolished by the Legislature of 1921. This had the effect of restoring the old franchise rates except for the ensuing period of six months, as provided in the order of the Corporation Commission.

The order having been set aside by the Corporation Commission before it became final, necessarily had the effect to restore the old franchise rates. This left the regulation of the rates where it was placed by the Acts of 1921 above referred to, which repealed the old act and created the new commission and conferred jurisdiction upon municipalities to regulate the rates of public utilities operating within their limits.

The common council of the town of Pocahontas, in the exercise of the authority conferred upon it by the new act, promulgated and put into effect the franchise rates of the Central Power & Light Company in the town of Pocahontas. The correctness of its action depends upon the construction to be placed upon sections 17 and 23 of said act. Section 17 begins on page 199 and reads as follows: "Sec. 17. The jurisdiction of the municipal council or city commission of any municipality shall extend to and include all matters pertaining to the regulation and operation within the limits of any such municipality of any street railroad, telephone company, gas company furnishing gas for domestic or industrial purposes, pipe line company for transportation, distribution or sale of oil, gas or water, electrical company, water company, hydro-electric com-

pany or other company operating a public utility or
furnishing public service within such muincipality.

"Every person, firm, company or corporation en-
gaged in any such public service business within any
municipality shall establish, make and maintain such
adequate and suitable facilities, appliances, devices, con-
nections, installations and improvements in said mu-
nicipality as may be essential to enable such public util-
ity to properly perform its public utility duties within
said municipality, so far as may be required by its fran-
chise or contract, or so far as it is within the police
power of this State or said municipality to require such
service; and the municipal councils or city commissions
of municipalities within the State of Arkansas, regard-
less of class, shall have the exclusive right, and it is
hereby made their duty, from time to time, to make all
reasonable and proper rules and regulations with refer-
ence to the operation within such municipality of any
such utility, and to order the performance of any duty
devolving on such public utility under its franchise or
contract, if any, or under this or any other statute or
law, and from time to time to initiate, fix, promulgate,
regulate, modify, amend, adjust, readjust or otherwise
make and determine fair and reasonable rates to be
charged by all public utilities for furnishing public
utility service within such municipalities, which rates
shall be so determined and fixed by an order or ordin-
ance, after a hearing made, either upon its own initia-
tive or upon application of any such utility to such mu-
nicipal council or city commission; such hearing shall be
held after thirty days' written notice by the common
council or city commission to the utility of the time for
such hearing, unless application for such hearing is
made by the utility, in which event the hearing shall be
had within thirty days after written application by such
utility, unless the evidence with reference thereto can not
be reasonably adduced within such period, and in the
latter event such hearing shall be had as expeditiously
as feasible; provided, however, that said municipal coun-

cil or city commission shall, within sixty days after written application for such hearing, approve or disapprove in writing, wholly or in part, the schedule of rates and charges accompanying said petition; and if the said municipal council or city commission does not so act within the period of sixty days, the schedule of rates or charges filed by such public utility shall be deemed to have been disapproved.

"The said rates, when so fixed or determined, shall be final and binding, subject to the right of appeal on the part of the utility as hereinafter specified.

"Any such municipal council or city commission shall also have the right by order or ordinance, after due notice as aforesaid, to direct that said utility do or cause to be done within such reasonable time as may be herein prescribed, any reasonable thing necessary for the performance of any duty within said municipality of said public utility, subject to the right of appeal on the part of the utility as hereinafter specified."

Sec. 23 is on page 206, and reads as follows: "That nothing in this act shall deprive or be construed as depriving any municipality of the benefits or rights accrued or accruing to it under any franchise or contract to which it may be a party, and no court exercising jurisdiction under this act shall deprive such municipality of any such benefit or right."

When read and construed together, we think that it was the intention of the Legislature to confer express power upon municipalities to regulate the rates to be charged by public service corporations operating within their boundaries.

The concluding part of § 17 provides that the rates fixed by the municipalities in accordance with the provisions of § 17 of the act shall be final and binding, subject to the right of appeal on the part of the utility as hereinafter specified.

Sec. 19 provides that any person or corporation aggrieved by a rate fixed by the municipal council shall

have the right to have said action reviewed by the circuit court of the county in which the municipal council is located.

So it will be seen that if, in the exercise of its power to regulate the rates to be charged by public service corporations, the municipality should fix rates lower than the franchise rates, the public service corporation would have the right to have such action reviewed in the circuit court, if it deemed them unreasonable.

Again, if there were no franchise rates, the public service corporation would have the right to have the action of the municipality in fixing its rates reviewed in the circuit court if it deemed them to be unreasonable or discriminatory.

On the other hand, § 23 was enacted for the purpose of preventing a review of the action of the municipality in fixing the rates provided for in the franchise of such public service corporations. This is shown by the concluding part of the section, which provides that no court exercising jurisdiction under the act shall deprive such municipality of the benefit or right it has under the franchise granted by it to the public service utility. This view is strengthened when we take into consideration that the preceding section deals with the subject of the review which may be granted in the circuit court.

Of course, as we have already seen, the contract between municipalities and public service corporations as between themselves are binding, and, like contracts between private individuals, are subject to modification or change by the consent of both parties. Hence by consent the municipality might grant an increase of rates to the public service corporation if it was deemed reasonable and right to do so, and this right of contract between the parties is not taken away by the statute. The purpose of § 23 was to prevent the public service corporation from having the action of the city council reviewed where it placed in effect the franchise rates of

the corporation.    The Legislature evidently proceeded upon the theory that the contract granting the franchise, when accepted by the public service corporation, was valid and binding during the life of the franchise, and that, if the municipality elected to stand by it and refuse to grant a modification of it, no right to review in the courts should be given to the public service corporation.

It follows that the order of the municipality putting in force the franchise rates was a valid order and was not subject to review in the circuit court at the instance of the public service corporation.

Therefore the judgment will be reversed, and the cause will be remanded to the circuit court with directions to dismiss the petition of the Central Power & Light Company at its cost.

HART, J., (on rehearing.)    Counsel for appellee in their motion for a rehearing have called our attention to the case of *Home Telephone & Telegraph Company* v. *Los Angeles,* 211 U. S. 265, and base their right to a rehearing on the principles decided in that case.    We do not think that case lends any support to their right for a rehearing.    The Supreme Court of the United States expressly recognizes the right of the State to authorize its municipal corporations to establish by a contract the rates to be charged by a public service corporation for a definite term which is reasonable in point of time.    In that case the franchise was granted by an ordinance for a term of fifty years which was to be enjoyed in accordance with the terms and conditions named.    The council was given the power "by ordinance * * * to regulate telephone service and the use of telephones within the city * * * and to fix and determine the charges for telephones and telephone service and connections."    The court held that this gave ample authority to exercise the governmental power of regulating charges, but that it gave no authority to enter into a contract to abandon the governmental power itself.    The court expressly recognized in that case that an agreement as to rates might be au-

thorized by a State Legislature to be made by ordinance, and simply held that the ordinance authorized was not an ordinance to agree upon rates for the life of the franchise, but that it was simply an ordinance to fix and determine rates.

On the other hand, in *Vicksburg* v. *Vicksburg Waterworks Co.,* 206 U. S. 495, the Legislature had authorized the city "to provide for the erection and maintaining of a system of waterworks to supply said city with water, and to that end to contract with a party or parties who shall build and operate waterworks"; and the court held that it was within the right of the city council, in the exercise of the power conferred, to make a binding contract fixing a maximum rate at which water should be supplied to the inhabitants of the city for a limited term of years.

In determining the matter of contracts in cases like this, the Supreme Court of the United States has given the State decisions much weight and ordinarily followed them. The reason that the Supreme Court of the United States generally follows the decisions of State courts in construing their own statutes and constitutions is that the ordinary administration of the law is carried on by the State courts, and by the course of their decisions property rights become vested which it would be wrong to disturb.

In *Taliaferro* v. *Barnett,* 47 Ark. 359, the court held that a decision of this court when overruled stands as though it had never been, and that the court in reversing a judgment declares what the rule of law was in fact when the erroneous decision was made.

Again, in *Apel* v. *Kelsey,* 52 Ark. 342, the court said that former interpretations of the law have become rules of property and should not be overturned. See also *Townsend* v. *Martin,* 55 Ark. 192, and *Washington Fire Ins. Co.* v. *Hogan,* 139 Ark. 130.

Our statutes granting municipal corporations power to provide for or construct waterworks or works for

lighting the streets and furnishing such power to consumers have already been before this court for construction in varying forms, and it has always been held that municipal corporations may by ordinance accepted by a public service corporation fix rates for the life of the franchise within a certain designated minimum and maximum, and that the rates so fixed are matters of contract. The right of the public service corporation to take the rates so fixed and to rest securely thereon has been regarded as guaranteed by the Constitution of the State and of the United States. *Lackey* v. *Fayetteville Water Co.,* 80 Ark. 108; *Arkadelphia Elec. Light Co.* v. *Arkadelphia,* 99 Ark. 178; *Mena* v. *Tomlinson Brothers,* 118 Ark. 167; *Arkansas Light & Power Co.* v. *Cooley,* 138 Ark. 390, and *Lonoke* v. *Bransford,* 141 Ark. 18.

It is a rule of construction that existing statutes become a part of such contracts. Hence in *Arkadelphia Elec. Light Co.* v. *Arkadelphia,* 99 Ark. 178, and *Lonoke* v. *Bransford,* 141 Ark. 18, it was held that the municipal corporations had the power to lower rates. The fixing of minimum and maximum rates in such ordinances is evidently made to meet the rise and fall of prices in labor and commodities.

It is worthy of note that the public service corporations have heretofore contended that contracts fixing maximum and minimum rates are binding. Doubtless, therefore, many such franchises have been granted on the faith of our previous construction of the statute, and the overruling of these decisions might result seriously to those who have relied on them in the conduct of their affairs.

It is also suggested that our decision is in conflict with *Southern Iowa Electric Co.* v. *Chariton,* 255 U. S. 539, and *San Antonio* v. *San Antonio Public Service Company,* 255 U. S. 547. We do not think so. In the first-mentioned case, the statute provided in express terms that the power of municipal corporations to regulate rates shall not be abridged by ordinance or con-

tract; and the Supreme Court of the United States properly followed the decision of the Supreme Court of Iowa that the limitation or restriction provided by the statute could not be bartered away by the city council.

In the last-mentioned case the Constitution of Texas provided that "no irrevocable or uncontrollable grant of special privileges or immunities shall be made, but all proceedings and franchises granted by the Legislature or created under its authority shall be subject to the control thereof"; and it was properly held by the Supreme Court of Texas and of the United States that this prevented the ordinance in question from becoming a binding rate contract. The court held further that, even if the city had been granted power to make such contracts by a later amendment to the State Constitution, the existing ordinance was not thereby converted, for the future, into a contract.

Therefore the motion for a rehearing will be denied.