ARKANSAS LOUISIANA GAS CO. v. CITY OF TEXARKANA, TEX.*

CITY OF TEXARKANA, TEX., v. ARKANSAS LOUISIANA GAS CO.

No. 8646.

Circuit Court of Appeals, Fifth Circuit.

June 3, 1938.

William H. Arnold, Jr., and Jno. J. King, both of Texarkana, Tex., and W. C. Fitzhugh and H. C. Walker, Jr., both of Shreveport, La., for Arkansas Louisiana Gas Co.

*Rehearing denied July 20, 1938.

Benjamin E. Carter, of Texarkana, Ark., and Ed B. Levee, Jr., of Texarkana, Tex., for City of Texarkana, Tex.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

What is in question here is the validity and enforceability of, and the relief to be granted under, Section IX[1] of the June 18, 1930, ordinance under which appellant holds and operates its franchise in Texarkana, Texas.

Texarkana, Texas, and Texarkana, Arkansas, are twin cities under separate state governments. Each has its separate and complete political and corporate structure. In 1923 one gas company, the Southwestern Gas and Electric Company, served both cities, under a separate and distinct franchise as to each. Separate ordinances as to each city fixed substantially the same rates in each for domestic and commercial consumption. Article (e) of the Texas city franchise provided that the Utility "would not, nor would its successors and assigns, charge a greater sum for furnishing gas to domestic and commercial consumers in the city of Texarkana, than it at the same time charges and collects from like consumers, for similar services in Texarkana, Arkansas." In 1928 the franchises of the Utility in the two cities were assigned to the Southern Cities Distributing Company, now Arkansas Louisiana Gas Company, the appellant. In 1930 appellant applied to the Texas city Council for, and litigation was begun as to, increased rates over those fixed in 1923. After the Council had denied the application, and an appeal had been taken to the Railroad Commission, the City and the Gas Company reached and embodied in a new franchise an agreement for rates considerably higher than the 1923 rates they replaced. These rates, while differing in some particulars, were the same in substance as those which at about the same time appellant and the Arkansas city had agreed upon and fixed. The Texas city agreement provided that it should become effective upon written acceptance by the grantee. On June 18, 1930, this acceptance was filed.

No sooner had the 1930 agreements been effected than trouble began. In the Arkansas city the electors petitioned for a referendum on the 1930 ordinance. Litigation in state and Federal courts followed. When it was all over the 1930 ordinance was repealed, and on December 1, 1933, there was a court order making the 1923 rates effective in the Arkansas city, and requiring refunds to Arkansas city consumers back to 1930 on the basis of those rates. In the meantime, appellant, on October 23, 1933, applied to the Arkansas city Council for an increase in rates. That Council, on November 14, 1933, served notice that it would consider reducing the rates from 45¢ to 40¢. On December 22, 1933, appellant's schedules were rejected by the Council, the 40¢ rate was thereafter ordered in, and appellant filed its suit in the Federal court in Arkansas to prevent the enforcement of the 1923 or 45¢ rate, and the proposed reduction to 40¢ as confiscatory, and to enjoin the December 22 ordinance refusing to grant the October 23 application for increases. The refunds ordered were, however, made and from December 1, 1933 to February 16, 1934, when the Arkansas Council prescribed a 40¢ rate, and appellant obtained its restraining order, the Arkansas city consumers were billed on the 1923, or 45¢ rate. Thereafter, and until December 1936, the October, 1933, rates appellant had proposed were put in force and maintained under injunction and bond. The District Court, on final hearing, permanently enjoined the 40¢ rate of February, 1934, dissolved the injunction as to the 1933 rates, and gave judgment on the intervention and bond for reparation, based on said rates. Appellant, without the benefit of injunction, or other suspensory order, except as to the judgment for refund in February, 1934, appealed from this decree, and the 1923 rate was again in effect, pending final disposition of the appeal, which is as yet undisposed of.

While these things were transpiring on the Arkansas side of the line, there was no quiet on the Texas or western, front. Rumblings of discontent with the rates charged them, as against those being contended for in Arkansas, grew ever louder, until finally, in December, 1933,

---

[1] It was provided by Sec. IX:
"If grantee shall be finally compelled to, or should voluntarily place in any rates in the City of Texarkana, Arkansas, less than the rates granted by the ordinance, then and thereupon the lessened rate shall apply in the City of Texarkana, Texas, and Grantee shall not be authorized or permitted to charge and collect any higher rate."

the storm broke in the form of a resolution directing appellant to comply with Article IX of the franchise agreement, to place in effect in the Texas city the 1923 rates which, as the result of the decree of December 1, 1933, it was then collecting in Arkansas, and to make refunds to its Texas consumers as it was doing in Arkansas, back to 1930 on the basis of the 1923 rates.

Appellant, on its part, was not idle. Moving pari passu on both fronts, on November 3, 1933, it applied to the Texas city Council to put in force there as of November 23, the same schedule of increases as those it had already, in October, 1933, applied for in Arkansas. On November 4 it filed notice that it would, at the end of one year, apply for an increase over those then proposed. On November 14, 1933, the Texas city Council passed a resolution declaring that it was willing, without waiving its rights under the franchise, to consider whether the existing rates were unreasonable, and calling upon the company to furnish certain information. This information supplied, the Council in January, after a hearing on the application, adopted a resolution refusing to waive any of its franchise rights, or to grant an increase. In the meantime, on November 16, the Texas city sued appellant in the state court, and obtained a temporary injunction preventing it from putting into effect the increase of rates it had applied for, without having given the one year's notice required by Sec. VIII(a) of the franchise.[2] This suit was removed to the Federal court where appellant answered and counterclaimed that Sec. VIII(a) was invalid, that it was pursuing the proper course to secure the rate relief it was seeking, and prayed that the temporary injunction be dissolved, that Sec. VIII(a) be cancelled, and for general relief.

On January 15, 1934, the City amended to allege that if Sec. VIII(a) was invalid, the defendant still was not entitled to increase its rates, because it was not proceeding as required by the Texas statutes. In addition, invoking Sec. IX of the 1930 franchise ordinance, it sued to specifically enforce it, and for a decree requiring defendant to place in effect in the City of Texarkana, Texas, the lower rates then being charged in the Arkansas city, towit, 45¢, the 1923 rate, and to make reparation to the Texas city consumers back to 1930, based on that rate. On March 9, defendant replied to the City's amended petition by answer and counterclaim, reaffirming its position that Sec. VIII(a) was invalid, and that it was proceeding properly to get relief from the confiscatory rates, and alleging that Sec. IX was invalid, and that if valid and enforced, it did not entitle plaintiff to the relief claimed. It alleged that for a considerable part of the time it was supplying gas in the Arkansas city not at the 1923 rates, but at rates higher than those charged in the Texas city, and finally, that the rates fixed in the 1930 Texas city ordinance were confiscatory. It prayed for a dismissal of the temporary injunction, the cancelling of Secs. VIII(a) and IX, and for general relief. On May 22, 1934, the City secured an order of dismissal of its suit then pending, and on the next day filed substantially the same suit as a new proceeding in the state court. This suit was also removed to the Federal court, where, that court holding that the dismissal of the City's petition in the first suit had not effected dismissal of defendant's counterclaim, the City obtained a reinstatement of its first suit, and an order consolidating the two suits for trial. More than a year having elapsed since the filing of the suit, the issues as to Sec. VIII(a) having become moot, and the parties having copiously and frequently amended, the City, on December 30, 1936, filed a supplemental bill in which the events in Arkansas were set out, and the prayer was that Sec. IX be enforced, and under it defendant ordered—

"(1) to place in immediate effect in Texarkana, Texas, certain Arkansas rates.

"(2–3) to pay reparations, based on the Arkansas rates from June 13, 1930 to date of decree divided into three periods of time;

"(a) June 13, 1930 to February 16, 1934;

"(b) February 16, 1934 to December 4, 1936;

"(c) December 4, 1936, to date of decree;

"(4) that for (a) and (c) periods the reparations be distributed to the gas consumers in Texarkana, Texas,

"(5) that reparations for (b) period be held in court, conditioned on the outcome of the appeal in the Arkansas rate case."

---

[2] This section provided that the city would not apply for a reduction, the company for an increase, except upon a year's notice.

On July 14, 1937, defendant filed a separate amended answer and counterclaim, carrying forward all of its defenses, and particularly that Secs. VIII(a) and IX were void, and that if effective, Sec. IX did not entitle plaintiff to any of the relief it prayed. Thereafter, the City's motion to strike appellant's answer and counter claim was sustained, and a decree was entered, finding and adjudging. (1) that Section IX was a valid and binding contract, and that it obligated appellant to place in effect in the Texas city, after, but not before it had been finally compelled to, or should voluntarily place them in effect in Texarkana, Arkansas, any rates effective in that city which were less than those provided for the Texas city by the 1930 ordinance; (2) that so construed, Section IX was applicable to the period from December 1, 1933, to February 16, 1934, when defendant collected from its consumers in Texarkana, Arkansas, the 1923 rate, and required refunds to the Texas consumers for that period on the basis of the Arkansas rates; (3) that so construed, it was not applicable to the period from June 16, 1930 to December 1, 1933, during which defendant had collected from its Arkansas consumers the equivalent of the rates collected from the Texas consumers, and the Texas consumers were not entitled to refunds for that period; (4) that so construed, since litigation has been since February 16, 1934, and still is, pending over the Arkansas rates, and defendant has not, for that period, voluntarily put in, nor been finally compelled to put in, rates less than those prescribed under the 1930 ordinance for the Texas City, plaintiff's suit is premature, and shall be dismissed without prejudice, insofar as it seeks refunds for the past, and a new rate for the future on the claim that the 1923 rate has been put into effect in Arkansas, either voluntarily, or under final compulsion.

Appellant has appealed as to findings (1) and (2); appellee has cross-appealed as to findings (3), (4) and (5).

As the case stands before us then, only two broad questions are presented: (1) The validity and enforceability of Sec. IX; (2) its meaning, application and effect, if valid and enforceable. Appellant insists that the clause is completely invalid, because an attempt on the part of the City to surrender its non-delegable rate-making function to appellant, and the constituted authorities in Arkansas. It argues that by its charter the Texas city is authorized and obligated to exercise its governmental function of rate regulation, and that it may not, under its general powers to contract for rates, bind itself or appellant to operate under rates which may from time to time be fixed by and in Arkansas. It insists that the rate-making function of cities in Texas embraces and includes the power to raise, as well as to reduce rates, in the interest of and in accordance with the public need. City of Seymour v. Texas Electric Service Co., 5 Cir., 66 F.2d 814. Texas-Louisiana Power Co. v. City of Farmersville, Tex.Com.App., 67 S.W.2d 235. It urges that "this class of functions the city must perform. The city has no option. They are not to be exercised or ignored by the municipality at discretion. . * * * Such functions are legal duties imposed by the state upon its creature." City of Uvalde v. Uvalde Electric & Ice Co., Tex.Com. App., 250 S.W. 140, 141; Texas Gas Utilities v. City of Uvalde, Tex.Civ.App., 77 S. W.2d 750. It insists that this clause, which declares that "grantee shall not be authorized or permitted to charge or collect any higher rate than the lessened rate prevailing in Arkansas," and if valid, obligates the appellant and the City to maintain a particular rate, merely because it has been instituted in Arkansas, is contrary to the public policy of Texas, and void. It urges therefore, that the decree is fundamentally erroneous in adjudging the clause valid, instead of invalid, in retaining the bill to grant partial relief, instead of dismissing it altogether. In the alternative, it argues that if wrong in this, and the clause is valid and enforceable at all, it is so only prospectively to compel the fixing of rates for the future in Texas, after they have been finally fixed either compulsorily, or by agreement in Arkansas, and not retrospectively, by way of refund, for the periods when in Arkansas the rates were in dispute. It insists, therefore, that the District Judge was right in holding the clause inapplicable, and denying relief as to the 1930–34 period of controversy in Arkansas, wrong in holding it applicable and granting relief as to the December 1933–February 1934 period, when, though the first litigation had ended, appellant had in October, 1933, applied for and the controversy was pending, over still higher rates: that he was right in part, and wrong in part, as to the last period, from 1934 to date, right in dismissing the bill, wrong in dismissing it without prejudice. In short, appellant is here urging that the bill should have been

dismissed, both because the contract it sought to enforce is not a valid one, and because if valid, it does not apply, except prospectively, to require the Arkansas rates to be put in in Texas, after, and not before, they have been made finally effective voluntarily or by compulsion.

As to that part of the decree which sustaining the contract as valid, and awarding it reparation, was in its favor, the City insists that the clause it seeks to enforce in no manner invades or impairs its rate-making function, in no manner abdicates or delegates its governmental power to reg-ulate the rates to be charged within its con-fines. It argues that the clause does no more than to obligate appellee, in consid-eration of its franchise, to serve the Tex-as city under rates no greater than those which from time to time, the company agrees, or the law declares, are reasonable and fair for its neighbor city in Arkansas. That in short, the clause merely operates to bind appellant not to discriminate against the Texas city by rendering substantially the same service in Arkansas, for less than it charges for it in Texas.

Agreeing with appellant that the clause would be without binding force if appel-lant was urging it against the City's right to regulate the rates, either upward or downward, in the exercise of its govern-mental power, the City argues that that prin-ciple is not applicable here, for here is no question of preventing the City from regu-lating appellant's rates. The question is merely whether the City may enjoy the fruits of a contract which appellant vol-untarily, and for a consideration, made with it. Urging that the contract is bind-ing upon appellant to be enforced as writ-ten, at least, until appellant shows that the application of the Arkansas city rates in the Texas city will in fact operate against the public interest, the City maintains that the limitations, if any, imposed by its rate-making, upon its contractual, powers come into play and have effect only in situations where detriment to the public from the contract actually, not theoretically, appears. It insists; that here it is not shown that the rates are confiscatory, or otherwise against the public interest; that indeed, throughout the litigation in Arkansas the rates insisted on have been sustained; that the claim is merely that since the power to regulate cannot be contracted away, and a city cannot bind itself by contract to any fixed rate, the Utility cannot be bound to one. Citing cases which it claims hold that a Utility may be held to a rate fixed in its contract, Cleburne Water, Ice & Lighting Co. v. City of Cleburne, 13 Tex.Civ.App. 141, 35 S.W. 733; Texarkana Gas & Elec-tric Co. v. City of Texarkana, 58 Tex.Civ. App. 109, 123 S.W. 213; Fort Smith Light & Traction Co. v. Fort Smith, D.C., 202 F. 581; Dallas Ry. v. Geller, 114 Tex. 484, 271 S.W. 1106; Southern Utilities Co. v. City of Palatka, 268 U.S. 232, 45 S.Ct. 488, 69 L.Ed. 930; City of Terrell v. Terrell Elec. Light Co., Tex.Civ.App., 187 S.W. 966; Town of Pocahontas v. Central Pow-er & Light Co., 152 Ark. 276, 244 S.W. 712; Texas Telephone Co. v. City of Mart, Tex. Civ.App., 226 S.W. 497, the City insists that that principle applies here to bind the Utility to decrease its rates, as it decreases them in Arkansas. But see City of San Antonio v. San Antonio, 255 U.S. 547, 41 S.Ct. 428, 65 L.Ed. 777; R. R. Comm. of Calif. v. Los Angeles Ry., 280 U.S. 145, 50 S.Ct. 71, 74 L.Ed. 234; Uvalde v. Uvalde Electric & Ice Co., supra.

Upon those parts of the decree which were adverse to it, the City argues vigor-ously that the principal apparent purpose of the parties was to keep the Texas and Arkansas rates on a parity, so that at all times the citizens of each city should pay substantially the same for the same serv-ice; that the contract should therefore be construed as applicable not merely prospec-tively, but retrospectively. As to the 1930-33 period, it urges that it should have had the refund just as prayed, and as to the period 1934 to date, that the cause should not have been dismissed, but should have been retained until the Arkansas litigation had ended, for a decree then to be entered requiring the institution of the finally es-tablished rates for the future, and refunds for the past.

We think appellant has the right of it throughout, and that the decree should be reversed, both because the clause is com-pletely invalid, and because, if valid and enforceable, it is without application here. But the clause is not valid. It is complete-ly invalid and unenforceable as an attempt to abdicate and delegate the City's rate-making function, and the decree should be reversed because it is. Whatever might be said for the City's side of the case, if, as it assumes, the contract were in effect one in which the Utility had agreed, in consider-ation of the franchise, to maintain a fixed rate, we think it perfectly plain that the

clause in question is not such a contract. Its effect is to abdicate, at least qualifiedly, the City's rate-making function for the future, and to delegate it in the same qualified way, to the Utility and the Arkansas city.

Under it, if the Utility decides to lower its rate in Arkansas by so much as a fraction, the rates then fixed by it become the rates which may be charged in the Texas city. If the Arkansas city finally lowers its rates, ever so little or so much, those rates become the rates in Texas, no matter if those rates are deemed by the Texas city to be grossly unjust or inadequate. For this clause, unlike the clauses in the cases on which the City relies, is not one merely agreeing upon a rate which the Utility may charge. It is one purporting to bind the City and the Utility alike to abide by the future action of the Utility and the City of Arkansas, if less rates are put in there voluntarily, or under final compulsion. The clause does not provide that the grantee shall be compelled, if required by the Texas city Council, to put in the lessened Arkansas rates. It provides peremptorily and without qualification, that if the lessened rates are placed in in Arkansas, "then and thereupon the lessened rates shall apply in the city of Texarkana, Texas, and grantee shall not be authorized or permitted to charge and collect any higher rate." A more definite binding of the hands of the City Council, a more complete abdication of its rate-making function, a more complete delegation of it could hardly be imagined. In the light of these provisions, the supposed lack of mutuality of which appellant makes so much, and the City discounts as inapplicable, disappears from the case, for here, by a specific provision that the lessened rates shall apply, and that grantee shall not be authorized to charge and collect any higher rate, is an attempt to mutually bind appellant and the City of Texarkana to any lessened rates which may in future be fixed within the Arkansas city.

On the record before us the binding quality of this clause as it is conceived of by the City, is emphasized not alone by its suit for specific performance, by which it affirms the binding force as a contract of the clause it sues on, but by the undisputed fact that resting on the contract, it has entirely abdicated its rate-making function, and has refused, upon the application of appellant that it do so, to exercise its rate regulating powers.

The decree is reversed and the cause is remanded with directions to dismiss the bill.

Reversed and remanded.